# CHARLESTOWN.

## SLIFER v. HOWELL'S ADMR.

### September 9, 1876.

9 391
41 30

9 391
53 512

1876.
August Term.

The county court of Jefferson county, at the May and June terms of said court, in the year 1861, under an act of Assembly of the State of Virginia, and an ordinance of the constitutional convention, held in Richmond, for the State of Virginia, passed orders to issue bonds to be sold to raise money for the use of the soldiers then in the field, and their families, and those that might thereafter take the field from said county. A bond for $500 was made, payable to David Howell or order, on or before the first day of January, 1863. It bore date June 21, 1861, and recited, on its face, that "it was issued under, and pursuant to, two several orders of said county court of Jefferson, one dated on the twenty-second day of May, 1861, and the other on the eleventh day of June, 1861." David Howell, on the twenty-second day of June, 1861, endorsed and delivered this $500 bond to Esrom Slifer, in consideration of which, Slifer paid him $500, in notes upon the Valley Bank of Virginia. At the time these orders of the county court were made, soldiers from the county of Jefferson were in the field, engaged in the late civil war, in behalf of Virginia against the United States. After the war was over, the said Slifer instituted an action of assumpsit against said Howell, to recover the value of the price paid him for said bond, on the ground that said bond was illegal and void, being issued to be sold to raise money to aid in carrying on the rebellion.—HELD:

1. That the said Slifer was not entitled to recover under the circum-stances. That said bond was illegal and void. That the parties had legal notice of the vice in the bond about which they contracted, and therefore were "in pari delicto," and that the maxim applies "potior est conditio defendantis."

2. That this action cannot be sustained under the circumstances, on the ground that it is a contract collateral to that upon which the bond

assigned, was issued; because it was connected with that contract by the fact that the bond constituted the consideration for the alleged implied promise; and when a contract is thus connected by its consideration with an illegal transaction, a court of justice will not aid its enforcement.

*Supersedeas* to a judgment of the circuit court of Jefferson county, rendered on the twentieth of April, 1870, in a suit therein then pending, in which Esrom Slifer was plaintiff, and Samuel Howell, administrator of David Howell, deceased, was defendant. The writ was granted on the petition of said Samuel Howell, the plaintiff in error. The facts of the case are set forth in the opinion of the Court.

Hon. E. B. Hall, Judge of said circuit court, presided at the trial below.

*J. M. Mason* for plaintiff in error.

*W. H. Travers* for defendant in error.

EDMISTON, JUDGE:

" Esrom Slifer instituted an action of assumpsit in the circuit court of Jefferson county, against David Howell, to recover money paid by him to said Howell, for a bond assigned by Howell to him. In his declaration, it is alleged "that, on the twenty-first day of June, 1861, the county court of Jefferson county, Virginia, by its agents, Braxton Davenport, Thomas Rutherford, and Humphrey Keys, made its certain writing obligatory, sealed with the seal of the said court, and thereby the said county court acknowledged itself held, and firmly bound unto David Howell or order, for value received, in the sum of $500, which sum the said county court promised to pay to the said Howell, or order, on, or before the first day of January, 1863, with interest at six per cent. payable semi-annually ; and that said Howell, on the twenty-second of June, 1861, assigned the said note to the plaintiff, Slifer, for value received, to wit: the sum of $500 ; that said sum of money was not, and has

not, been paid. And it is then averred that the bond, at <span style="float:right">1876..<br>August Term.</span> the time it became due, was wholly worthless, and of no <span style="float:right">Slifer<br>v.<br>Howell's Admr.</span> legal value, because he says the same was issued by the said county court for the purpose of equipping, aiding, and assisting, the militia, or military, forces of Virginia, in hostile action against the government of the United States, and in treasonable efforts, and in carrying on the late civil war against the Government of the United States, and the restored government of Virginia, wherefore, no action could have been maintained, at any time, on said bond, or could now be maintained against the said county court.

The defendant plead non assumpsit, on which issue was taken, and, upon a trial before a jury, a verdict was rendered in favor of the plaintiff, and judgment entered thereon. In the progress of the trial, various instructions were asked for by the defendant, some of which were given, as asked, and others qualified, and so given. Also, instructions, at the instance of the plaintiff, were given; exceptions were taken by the defendant to all the rulings of the court adverse to his pretensions. After verdict for the plaintiff, the defendant moved the court for a new trial, which was overruled, and he excepted to that, and had the facts certified.

To this judgment, so obtained, the defendant below has obtained a *supersedeas*, and brings the case into this court for review.

I do not deem it necessary to state all the facts that were disclosed in the case, nor the several instructions of the court to which exceptions were filed; but may say that the allegations contained in the declaration cover, substantially, all the material facts in the case, and that the said allegations are, substantially, true.

The following are the orders of the county court of Jefferson, and the bond assigned by the defendant Howell to the plaintiff:

"MAY TERM, 1861—(May 22, 1861.)
County Court of Jefferson County, Va.:

The justices of this county having been summoned to

50

this day to consider the propriety of accepting or adopting an act of the Legislature of this State, passed the 19th day of January, 1861, to authorize the County Courts of the several counties of this State to make appropriations to arm the militia of this State; and a majority of the whole number being present (as appears above), this Court, by an unanimous vote, accepts the said act of Assembly, and orders that Braxton Davenport, Thomas Rutherford, and Humphrey Keys be, and they are hereby, appointed agents to negotiate a loan of twelve thousand five hundred dollars ($12,500), payable as follows, viz: $3,500 on January 1st, 1862; $3,000 on January 1st, 1863; $3,000 on January 1st, 1864, and the residue, $3,000, on January 1st 1865; the interest to be paid semi-annually, and ten per centum on the State taxes and on the county levy of the present year, to meet the payment due January 1st 1862, and the interest arising on the bonds to July 1st, 1862. The sum of $3,500 to be paid by the agents above named, as it may be wanted, to the committee appointed on the first day of this term, and to be applied as directed by order of the Court made on that day. The residue of the appropriation, amounting to nine thousand dollars, to be paid by the agents above named, as it may be wanted, to a committee of nine, to consist of Braxton Davenport, presiding justice, and eight others to be selected by him—one for each magisterial district of this county—and the money to be expended by them in such manner as they may think best for the use of the soldiers now in the field and their families, or those that may hereafter take the field from this county. The following are the names of the said committee of nine, viz: B. Davenport, Dist. No. 1; Henry W. Castleman, Dist. No. 2; Meredith Helm, Dist. No. 3; John J. Lock, Dist. No. 4; James Law. Hoff, Dist. No. 5; Jacob Rinehart, Dist. No. 6; C. T. Butler, Dist. No. 7; Robert N. Duke, Dist. No. 8; Charles Johnson."

"JUNE TERM, 1861—(June 11th, 1861.)

An order having been made at the May term ,1861, of this Court, appointing Braxton Davenport, Thomas Rutherford, and Humphrey Keys to negotiate a sum of $12,500 in behalf of this Court, under the provisions of the act of the General Assembly of this State passed January 19th, 1861, and it being deemed expedient to make this additional order, it is now further ordered that said commissioners be, and they are hereby fully authorized and empowered, in the name and behalf of this Court, to issue bonds for the amount of said loans, in such sums as they may deem expedient, payable in the manner prescribed in said former order, and the Clerk is hereby authorized and directed to affix the seal of this Court to each of said bonds, in attestation of the full sanction thereof by this Court.

A true copy.

Teste :

W. A. CHAPLINE,
Clerk C. C." .

"BOND.

COMMONWEALTH OF VIRGINIA.

*Jefferson County :*

[$500.]

Know all men by these presents, that the County Court of Jefferson acknowledges itself held and firmly bound unto David Howell, or order, for value received, in the sum of five hundred dollars, which sum the said County Court of Jefferson promises to pay to the said David Howell, or his order, on or before the 1st day of January of the year 1863, together with interest thereon at the rate of six per centum per annum, from the date hereof until paid, which interest shall be paid semi-annually from said date. This bond being issued under and pursuant to two several

orders of said County Court of Jefferson, one dated on the 22d day of May, 1861, and the other on the 11th day of June, 1861.

In testimony whereof, and in pursuance of said orders, Braxton Davenport, Thomas Rutherford, and Humphrey Keys, the agents appointed for the purpose, have hereto set their hands, and Thomas A. Moore, Clerk, has affixed hereto the seal of said Court, and duly attested the same, June 21st, 1861.

BRAXTON DAVENPORT,<br>
THOMAS RUTHERFORD,<br>
HUMPHREY KEYS,<br>
Agents.

{ County Seal. }

Attest :

  THOMAS A. MOORE, Clerk."

This bond was assigned by Howell, by his name being indorsed thereon, June 22, 1861, and the proof shows that it was delivered on that day to the plaintiff, for which he paid him $300 in Virginia bank notes, and gave his note for $200, which he paid in a few days in the same way.

The action of the circuit court is sought to be sustained on the ground that this was an assignment of a bond by Howell to Slifer, which proved to be worthless, for the reason assigned in the declaration, and that under the familiar doctrine applicable to the assignment of bonds and notes, the plaintiff was, and is, entitled to recover the price paid by him for the said bond. Whereas, the defendant below claimed, that the bond being issued for the purpose of aiding the rebellion, it was void, and that it was illegal, and that no action lies on any contract, the consideration of which is either wicked in in itself, or prohibited by law.

1876.
August Term,

Slifer
v.
Howell's Admr.

The contract of assignment of what is commonly called " cash paper," has undergone judicial investigation, and the obligation of the assignor is well defined and understood. It is that he warrants the solvency of the debtor and the existence and justice of the debt. Upon the assignee using or exercising due diligence to collect the debt, and failing, because of the inability of the debtor to pay, or because the debtor shows that he ought not, in law, to be required to pay the same, and thus defeats a recovery ; then the 'law raises an implied promise, on the part of the assignor, to repay the price which he received for it. A suit is not always necessary to entitle the assignor to recover back, but he must show that a suit would be unproductive of good, and that the assignor has suffered no loss for the want of such suit ; such as the notorious insolvency of the debtor, or some reason why a judgment could not be had. *Mackie's Exor. v. Davis*, 2 Wash. 219 ; .Caton v. Lenox, 5 Ran. 42; and many other cases in Virginia. There is no controversy about this doctrine between the parties ; the controversy is as to its application to this case, the plaintiff, below, claiming that it does, and the defendant claiming that it does not.

If this case is to be ruled by the principle which applies to the case of assignor and assignee, in the transfer of notes or bonds for value, then the plaintiff, below, would be entitled to an affirmance of this judgment. He has shown all that was necessary for him to show, to entitle him to recover. He has shown the purchase and payment of the price; the assignment and delivery of the bond; and that a suit upon the bond was unnecessary ; because of its being illegal, and not capable of enforcement in the courts of the country. This would entitle him, ordinarily, to a judgment. This view of the subject has been pressed with great force and earnestness ; but I cannot concur in the view so taken. I think it falls within the rule in regard to contracts made in violation of law, or public policy.

1876.
August Term.
——————
Slifer.
v.
Howell's Admr.
In the case of *Armstrong v. Toler*, 11 Wheaton, at page 258, Chief Justice Marshall says: "Questions upon illegal contracts have arisen very often, both in England and in this country; and no principle is better settled than that no action can be maintained on a contract, the consideration of which is either wicked in itself or prohibited by law."

In the case of *Hanauer v. Woodruff*, 15 Wall. 439, a suit was brought by *Hanauer v. Woodruff* upon a note, the only consideration of which was the assignment of certain bonds, issued by the State of Arkansas, for the purpose of supporting the war against the Federal Government, and were styled "War Bonds," on their face, and that the purpose was known to both parties. The defendant resisted the payment of this note because the consideration thereof was vicious, for the reason that the said "war bonds" were issued in aid of the rebellion. Certain questions were certified to the Supreme Court of the United States, upon a division of the judges in opinion in the circuit court:

*First.* "Was the consideration of the note void on the ground of public policy, so that no action could be sustained on it in the federal courts?"

*Second.* "Was the consideration of the note illegal under the principles of the common law, the Constitution of the United States, and the laws of Congress, and the proclamation of the President, relating to the rebellion which existed, and was pending when the note was made?"

Mr. Justice Field who delivered the opinion of the court, says: "The first question presented, is embraced in the second, for if the consideration of the note was illegal under the Constitution of the United States and the laws of Congress, there can be no inquiry whether it was void for reasons of public policy. There can be no public policy which contravenes the law of the land. And that the consideration was illegal and void under the Constitution and laws of the United States, does not

:admit of a doubt.   If the Constitution be, as it declares
on its face it is, the supreme law of the land, a contract
or undertaking of any kind to destroy or impair its su-
premacy, or to aid or encourage any attempt to that end,
must necessarily be unlawful, and can never be treated
in a court sitting under that Constitution, as a merito-
rious consideration for the promise of any one."

The bond assigned by Howell to Slifer, was much like
the bond in the above case.   It was issued by the coun-
ty court of Jefferson county, to be sold to raise money
for the support of the war, to be expended for the use of
the soldiers then in the field, and their families, or those
that might thereafter take the field.   Soldiers from the
·county were then in the field; war was going on to over-
throw the government of the United States, and this
fund was to be expended for the use of the soldiers, then
and thereafter in the war.   It appears upon the face of
the bond, the authority under which the same was issued,
and upon looking to the orders of the court, any one
·could see that these bonds were, in fact "war bonds."   So
that it must be regarded that both parties had legal no-
tice of the object and purpose of these bonds.   The case
of *Hanauer v. Woodruff*, seems to be the same as this in
principle.   It is true that in that case, it was a suit to
recover the amount of the note executed for the "war
bonds;" and here it is to recover back the price paid for
them.   Now suppose Slifer had refused to pay his note
for $200, which he executed to Howell for part of the
price of this bond, and Howell had sued him on that
bond?   Can any one doubt but Slifer could have made
the same defence that Woodruff made, and with the
same effect?   I think not.   What is the difference in
the cases?   That was an unexecuted contract; this was fully
executed, after he paid the whole price.   Now he brings
his suit to recover back the money paid upon the execu-
ed contract, for the same reasons, and upon the same
grounds, in part at least, that was set up in defence by
Woodruff.   For if the bond is not void, then the plain-

tiff was not entitled to recover in this action. This he alleges in his declaration; it is the very foundation upon which his superstructure is erected. The parties in this case are in *"pari delicto,"* and the maxim applies *"Potior est conditio defendantis."* While Woodruff withheld his money, he was in the best condition, and he could not be compelled to pay over; but here Slifer has paid out his money, and now seeks to recover it back. He has surrendered his advantage and given it to the other party.

An argument is presented in this case, with great force and plausibility, that this action is founded on a contract collateral to that upon which the bond was issued, and, therefore, not tainted by it. The same point was made in the case of *Hanauer v. Woodruff*, in regard to which Justice Field said: " The contract, expressed by the note, is, indeed, collateral to that upon which the bonds were issued—that is to say, it is not the same, but a different contract. Yet it is connected with that contract by the fact, that the bonds constitute its consideration. It, therefore, gives value and currency to those bonds, and, to that extent, advances the purposes for which the bonds were issued."

When a contract is thus connected by its consideration, with an illegal transaction, a court of justice will not aid its enforcement. In the case of *Armstrong v. Toler*, 11 Wheaton 258, this language is contained in the charge given by the circuit court to the jury, and is approved by the Supreme Court: " The rule is now clearly settled to be, that when the contract grows immediately out of, and is connected with, an illegal act, or immoral act, a court of justice will not lend its aid to enforce it. And if the contract be, in part only, connected with the illegal transaction, and growing immediately out of it, though it be, in fact, a new contract, it is equally tainted by it."

In the case before us, the contract was for the sale of a bond, that all agree was illegal, because it was issued

for the express purpose of furnishing support to the soldiers then engaged in flagrant war against the United States. It is true, it seems to have been a sale, made by Howell to Slifer; yet it was a contract connected with the illegal transaction, and growing immediately out of it. The assignment of this bond, as before stated, is the foundation of the action. This case falls within the most limited rule laid down by the English courts, which is, if the plaintiff requires any aid from the illegal transaction to establish his case, he cannot succeed. 7 Taunton 246, cited by Justice Field, in *Hanauer v. Woodruff*.

In this case, no inquiry can be made, or proof given, to entitle the plaintiff to recover, without disclosing the fact, that the claim of the plaintiff to relief grows out of, and depends upon, this unlawful bond, purchased by the plaintiff of the defendant Howell. There was a demurrer to the declaration, which was overruled, but, as it is not relied on here, I take no notice of it.

There was a plea of non-assumpsit, and issue thereon joined. There is found, in the record, a special plea, but it is not filed, nor any notice taken of it in the record, and the jury was sworn to try the issue, not issues. It is claimed that there was error in trying the case on this plea, without issue being joined; but I do not see that the plea was filed, or the jury sworn to try, the issue tendered by this plea, and as the defence was properly made under the plea of non-assumpsit, and the jury was only sworn to try that issue, I do not think it amounted to an error. I am, therefore, of opinion that the judgment of the circuit court is erroneous, and must be reversed, with costs to appellant.

And this Court, proceeding to render such judgment as the circuit court should have rendered, it is considered that the judgment be reversed and annulled, that the verdict of the jury be set aside, and a new trial awarded, the costs of the former trial to abide the result of the

suit; on which new trial, the court shall give no instruction in conflict with the principles herein declared and set forth. Which is ordered to be certified to the circuit court of Jefferson county.

The other Judges concurred.

VERDICT SET ASIDE, AND NEW TRIAL AWARDED.