# CHARLESTON

## WOLFE v. MORGAN.

Submitted June 15, 1906.    Decided February 12, 1907.

1. APPEAL—*Review—Findings of Commissioner.*
    The syllabus in *Reger* v. *O'Neal*, 33 W. Va. 159, approved.    (p. 288.)

2. ADMINISTRATORS—*Sale of Chattels.*
    An administrator selling chattels of his decedent, taking neither cash nor security for the purchase money, is chargeable therewith. (p. 289.)

Appeal from Circuit Court, Randolph County.

Bill by Sallie J. Wolfe against S. D. Morgan and others. Decree for plaintiff, and defendant Morgan appeals.

*Reversed.*

GEO. M. FLEMING and J. F. HARDING, for appellant.

JARED L. WAMSLEY, for appellee.

BRANNON, JUDGE:

S. D. Morgan qualified as administrator of C. P. Wolfe. Sallie J. Wolfe, the widow of decedent, in her own right and as guardian of her children, filed a bill in equity in the circuit court of Randolph county against Morgan to obtain a settlement of his accounts as administrator. The case was referred to a commissioner to settle said accounts, and he reported an account finding a balance due the estate of $7,131.-22, which the court decreed against Morgan and he has appealed.

Morgan complains that the commissioner's report charges him with $1,070.10 advance in lumber. Before Wolfe's death he bought standing timber of Pickens and Roberts and Boyd. And after his death his administrator converted this timber into lumber, aggregating 530,050 feet. Morgan would account for a certain sum as realized from the sale of this lumber. It was sold to Kyle & Morgan, of which firm S. D. Morgan was a member. Morgan could give no definite account of what this lumber brought. His basis of accounting for it seems to be the price paid by Kyle & Morgan to

Wolfe in his lifetime for some other lumber. Evidence was given that the price of lumber had advanced thereafter, and the commissioner, though not allowing the full extent of that advance, yet allowed the estate the said sum over what Morgan claimed was a proper charge against him. · It was the plain duty of the administrator to keep an accurate account of the lumber sold and the price realized for it. Instead of doing so he went before the commissioner without data in this important transaction. He was called upon by the commissioner and also by counsel for plaintiff to furnish such data. He promised to obtain from Kyle & Morgan, the purchasers from him of the lumber, means of ascertaining what the lumber brought, and what the profit on it, and he was given a long time to do so, but failed to do so. He was given time while giving his deposition to furnish such information, but he never did so. He did not complete his testimony. At the close of the report he filed an answer stating that Kyle & Morgan's books did not show the sales and profits throughout from the shipment of the Wolfe lumber. Morgan says that after the lumber was all disposed of he made up a statement filed in the case of the amount with which, as he claimed, he was chargeable; but he says "I cannot say what became of my memoranda." Thus he gave no items entering into statement. He could not give the number of car loads of lumber shipped to Kyle & Morgan or the quantity and grade shipped. In short, though called upon and given time to furnish information of this large transaction, he was unable to do so, or rather did not do so. Yet the data could have been, and should have been, carefully preserved. The idea of an administrator manufacturing that large quantity of lumber and keeping no account of its proceeds. How can he complain that the commissioner has done the best he was able? He fixed the price which the lumber was worth and probably realized. If there is an element of uncertainty in this matter, but I do not say there is, who is to blame for it? Here we must apply the rule often laid down that where questions of fact are passed on by a commissioner, his finding will be given great weight, and should be sustained, unless plainly not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court. *Reger* v. *O'Neal*, 33 W. Va. 159.

As to the charge of $95.50 for rentals. The evidence is conflicting. We think it is supported by the evidence. I here apply the rule just stated, with the additional rule found in *Reger* v. *O'Neal,* just cited, that where a decree or finding of a commissioner is based on depositions conflicting, on which different persons might reasonably disagree as to the facts proved, or the proper conclusion therefrom, the appellate court will decline to reverse the chancellor, although the testimony might be such that the appellate court might have pronounced a different decree, if deciding the case in the first instance. *Bartless* v. *Cleavenger,* 35 W. Va, 719.

Morgan complains of a charge of $700.49. We think this complaint is just. It grows out of a check in favor of the decedent, but which came to the hands of his administrator from Kyle & Morgan. Kyle & Morgan rendered an account against Wolfe's estate charging it with that check showing a balance in favor of Kyle & Morgan against the estate for $4,426.22. Morgan paid it. The commissioner refused to allow the balance shown by that account, but deducted from the $4,426.22 the $700.49. That check was charged to Morgan as administrator, and he should have been credited with the $4,426.22, the balance of account of Kyle & Morgan paid by him. We think the decree is erroneous in this matter. Morgan should have been credited with $4,426.22.

As to the charges of $25 for a safe, $12 for a desk and $7 for a check perforator. Morgan claims that they were accounted for in his accounting for a sale of store goods belonging to the decedent. But the evidence of Mrs. Wolfe contradicts this, and shows a sale of them by Morgan. We cannot overrule the commissioner and court in this matter.

As to the claim of $83 for the use of saw mill. The testimony is contradictory. We see no ground for overruling the circuit court in this, and especially under the legal rule above stated.

As to the item of $20 for cash paid on funeral expenses by Mrs. Wolfe. Why is it charged to Morgan? We see no ground for it.

As to a charge of $400 on account of part of the purchase money for which Morgan sold a saw mill. He sold it at private sale, taking no security, owing to his sickness at the time, as he says. He says that upon his recovery he found

that the mill had been disposed of by the purchasers, who were worthless. This was a private sale, whereas the usual rule is a public sale. *Hudson* v. *Hudson,* 5 Munford 180. But the fault here is in not taking security. That makes the administrator liable. 11 Am. & Eng. Ency. L. (2nd Ed.) 1019; Schouler's Executors, sections 355, 356. The sickness of Morgan may have been his misfortune, but the estate cannot bear the loss. He had no right to sell without security.

As to the items of $1.25, $15, $1.80, $8.75 and $16.70, which were disallowed in the report for expenses of administration, sworn to by Morgan. We think his oath justifies his allowance of these items under principles stated in Barton's Ch. Prac., 2nd Ed., vol. 2, p. 731, sec. 210, part 1.

As to a claim of $2,856.29 credit for handling, hauling and loading lumber. The commissioner allowed $2,036.21 of it, refusing to allow the balance because vouchers were not presented. Those vouchers presented were allowed, a large number. The administrator was called upon for vouchers for the balance, but did not produce them. We cannot say that hundreds of dollars can be charged to a dead man's estate without vouchers. It was the duty of the administrator to take them. The commissioner says that a sum was placed in the account of disbursements under this head apparently only to make the account balance, but without specification or vouchers. This claim is not of sufficient weight to overrule the report.

The refusal of commission is justified by the statute providing that if an administrator fails to settle his accounts within the time required by law he shall be denied commission.

The point is made that depositions were read relating to matters in two amended bills taken before they were filed. We do not sustain this contention for the reason that the original bill called for a full account under which any part of the assets chargeable to the administrator could be taken cognizance of. The amended bills sought to charge the administrator with lumber manufactured from timber belonging to the estate. They could only have the effect of charging him with assets with which he could be charged under the original bill. Those depositions could be read under the

original bill. I consider this opinion unnecessary in the case, because it stands on a commissioner's report, and on oral evidence somewhat conflicting, certainly on its weight, involving no legal principles. No opinion should be written in such a case as this dependent on mere evidence and old established law. But for the useless practice of writing opinions in every case, simply to repeat fixed law, we should simply specify the contested items allowed or disallowed.

The commissioner did not make settlement by annual rests. There was no exception on that account, nor is there in this Court. Complaint is made that he charged interest on balance from close of first year of administration, but should not have charged "interest until six months after the first year." This point is not good. Interest is charged on each year's balance from its close. We do not see that the result would be different if the settlement had been with annual rests. We do not see that the balance did not exist at the end of the first year.

We have dealt with items presented as erroneous in a brief of appellant's counsel.

We, therefore, reverse the decree and remand the cause to the circuit court in order that a decree may be pronounced in accordance with principles herein stated.

*Reversed.*