# CHARLESTON.

JOHN F. YORK, ADMR. *v.* ERNEST MEEK *et als.*

Submitted May 2, 1922.   Decided May 9, 1922.

MORTGAGES—*Evidence Held to Warrant the Court in Declaring a Deed to be a Mortgage.*

Where in a suit brought by an administrator to have a deed made by his decedent for a valuable farm declared a mortgage and the land sold in payment of the debts of the estate it is shown:

(1) that about the time the deed was made decedent was being pressed for payment by his principal creditor, a bank;

(2) that the grantee was president of the creditor bank and conversant with the decedent's financial affairs;

(3) that shortly before the transaction, decedent wrote to the bank saying that some men were there prospecting his coal and he thought at a fair sale it alone would bring about $6,000, or more than sufficient to pay nis debts;

(4) that the grantee took title to the farm, about 30 miles distant from his home, without seeing it or making more than a casual inquiry as to its value;

(5) that when the deed was made he paid nothing, but executed his note to the bank for $3,761.95, and out of this, decedent's debts to the bank amounting to $2,996.95, except one note on which it had security, were paid; and the balance of $765 was paid to the decedent, the total being considerably less than the value of the farm;

(6) that contemporaneously with the execution of the deed, grantee executed a writing agreeing within a year thereafter to convey the farm to the grantor or his order, upon payment of the principal and interest and taxes, and all costs grantee may have paid on the farm, and to reimburse him for all judgments that might then or thereafter become a lien thereon, which agreement was to become void at the end of the year;

(7) that the grantee did not take control of the farm, but permitted the grantor to collect the income from it during his life-time, a period of about seven months, though the grantor did not live on the farm;

(8) that no payment of principal or interest was required of the grantee on his note to the bank, nor was it kept alive

by renewal, either during the life-time of the grantor or since his death, contrary to the custom of commercial banks.

These facts when considered together with the circumstances detailed in the opinion of this case warrant the court in declaring the deed to be a mortgage.

Appeal from Circuit Court, Wayne County.

Bill by John F. York, administrator, against Ernest Meek and others. Judgment for the defendants, and the plaintiff appeals.

*Reversed and remanded.*

*Fitzpatrick, Campbell, Brown & Davis, Blue & McCabe* and *H. V. Campbell,* for appellant.

*Vinson, Thompson, Meek & Renshaw,* for appellees.

MEREDITH, JUDGE:

At May 1918 rules John F. York, administrator of the personal estate of John Y. York, deceased, filed his bill against Ernest Meek, Kentucky National Bank and others for the purpose of having a deed made by the decedent to Ernest Meek, conveying to him decedent's home farm of 162 acres, situate in Lincoln District, Wayne County, and dated May 3, 1917, declared to be a mortgage, the bill further alleging that decedent's personal estate is insufficient to pay his debts and asking that the debts and priorities may be ascertained and the real estate sold to satisfy them. The bill alleges that on May 3, 1917, the decedent, owing a debt to the Kentucky National Bank, evidenced by certain notes executed by the decedent in the sum of from $2500 to $3000, executed and delivered to the defendant, Ernest Meek, the chief executive officer of the bank, a deed purporting to convey the 162 acres for the purported consideration of $3736.95; that the land conveyed was the home place of the decedent upon which a large dwelling house stands, with outbuildings, and that portions of the land are covered with valuable timber and underlaid with coal and other valuable minerals and is worth at least $8000; that while the deed appears to be an absolute deed upon its face, yet it was expressly agreed between the

grantor and the grantee that the land was to be held by the grantee as security for the payment of the sum of money with interest thereon which might be found due to the said Kentucky National Bank; that the grantee at the time of the conveyance had no beneficial interest in the property but was acting merely as holder of the title to secure the bank, of which he was the executive officer, in the payment of the amounts alleged to be due from the grantor; that the grantor remained in possession of the property until the date of his death, which occurred January 12, 1918, taking therefrom the rents, issues and profits, and exercising control and dominion over it, and that since the death of the decedent the grantee is asserting that the deed was an absolute fee simple conveyance and not intended as a security for the repayment of any sum of money due the bank, and has recently attempted to take possession of the farm. The defendants, Ernest Meek and Kentucky National Bank, filed their answer to the original bill February 17, 1919, to which plaintiff replied generally. In this answer it is averred that the deed was an absolute conveyance of the property by the grantor to Ernest Meek; that the Kentucky National Bank had nothing to do with the transaction and that the only interest it had was in getting its debt paid, then owing by John Y. York; it is further averred that the debt owing to the bank amounted to $2996.95, and that York was not in a position to pay this amount except by selling his farm and that the defendant Ernest Meek agreed to buy the farm from him and pay him $3500 therefor and which sum the grantor agreed to accept, but on figuring the amount of money he needed to pay the bank and for certain other purposes, not stated, proposed to sell his farm and did sell it to Meek for $3761.95, and that on the day the deed was made Ernest Meek paid to the bank its debt of $2996.95, and also paid to the grantor the balance of $765; the grantee denies that at the time the transaction was had there was any agreement or understanding between him and the grantor by which the deed was to be considered a mortgage or that the grantor was to have the right to repurchase the same, but does admit that after the

transaction was fully consummated the grantor stated to the grantee that he thought he could sell the farm within a year for more money than Meek had paid for it and requested that he be given the authority to sell it or repurchase it, and thereupon the said Meek, without any consideration except the desire to accommodate the grantor who had been and then was his friend, entered into an agreement with the grantor to resell him the farm at any time within one year from May 3, 1917, for the sum of $3761.95 with interest and any expenses incurred by Meek in connection with the farm and any taxes he may have paid thereon, but he avers that neither the grantor nor any one for him within that period exercised the option to purchase and that the agreement is therefore void, and avers that he is the absolute owner of the land. It is further denied that the farm is worth any thing like the sum of $8000, but on the contrary alleged that it is worth very little if any more than the sum paid for it. It is admitted that the grantor was permitted to remain in possession of the land and that it was the grantee's intention to leave him in possession for the period of one year, but it is denied that the grantor had the right to receive any other beneficial interest in the land except to make his home there during that time. The defendants pray that plaintiff's bill may be dismissed as to them and that Ernest Meek be forever quieted in his title and possession of the land described in the deed of May 3, 1917.

At May 1919 rules an amended bill was filed by plaintiff against the same parties and others, (it appearing that some of the heirs at law were not made parties to the original bill) in which it is averred that the grantor, John Y. York, was, at the time of his death and for a long time prior thereto and at the time the deed was made, wholly unfit to transact business of any kind or character by reason of mental and physical incapacity; that while he was suffering from such mental and physical incapacity, ills and infirmities he was improperly and unduly influenced to execute and deliver the deed to the said Ernest Meek and that the defendants, Kentucky National Bank and Ernest Meek, knew at the time of

the execution and delivery of the deed that the decedent was suffering from such mental and physical incapacity, ills and infirmities and that the grantor at the time of the execution and delivery of the deed was wholly incompetent to perform and do an act of that nature; that the two named defendants had knowledge of the exhaustion of the decedent's personal estate and attempted to secure a preference to the prejudice of decedent's other creditors; that at the time said deed was executed and delivered the decedent and Meek entered into a written contract whereby it was provided that Meek would reconvey the premises conveyed by the deed, a copy of which is filed with the amended bill; that the estate of the decedent is badly involved and that it is insufficient to pay the decedent's debts and prays that the deed may be wholly cancelled and set aside and that if that can not be done, that it be held to be a mortgage and that plaintiff's equity of redemption be allowed, and for general relief.

The Kentucky National Bank and Ernest Meek answering the amended bill, denied that John Y. York was incompetent to make the deed. The court by decree entered November 12, 1920, denied plaintiff any of the relief sought, dismissed his original and amended bills, and directed plaintiff to pay to Ernest Meek all the rents collected by him from the real estate in controversy. From that decree plaintiff obtained an appeal to this court.

Voluminous depositions were taken on behalf of both plaintiff and the two principal defendants. But two questions are presented,—First, whether the grantor was competent to make the deed, and second, whether it was the intention of the parties to it that it should be an absolute conveyance in fee or a mortgage.

The circuit court found that the grantor was competent and that the deed was not a mortgage but an absolute fee simple conveyance.

We can not say, from the record, that the grantor was incompetent. Upon that question the evidence is highly conflicting and this court will follow the finding of the circuit court thereon.

But there is no such conflict of evidence as to whether the deed was to be an absolute conveyance or a mortgage. The facts as to that are clear. The real question presented here is whether the facts proved show the transaction to be an absolute deed or a mortgage, a question of law.

For about twenty years John Y. York was engaged in the lumber business with John L. Billups, under the firm name of Billups and York. The firm transacted considerable banking business during this period at the Big Sandy National Bank of Catlettsburg; this bank's charter expired and its business was taken over by or merged into the Kentucky National Bank, and the firm continued to transact its banking business there, and was in debt to the bank. About 1912 or 1914, Billups and York met at the bank for a settlement of their affairs. The partnership was dissolved and each made some arrangement to take care of his part of the debt. The amount of this firm debt is not shown, nor does the amount that each was to pay appear; but whatever their debt was they severed their liability, and by arrangement with the bank each assumed payment of his part. York's note for his portion was carried by the bank for some time, when in 1916 it began pressing him for payment. The bank wrote him a number of letters, insisting on his making some arrangements about this debt, either by paying or securing it. This correspondence was carried on for some months. During this period the grantor executed and delivered a deed for the farm to his son, Dr. William York, of Williamson, who, it appears, was to take care of the debts in some way, but he failed to pay. On January 31, 1917, the bank wrote William York that after checking up the past due notes endorsed by his father it seemed useless for it to take part security and release the balance, and as the matter seemed doomed for delay it had written his father to that effect. That same day the bank wrote his father "After you were here to-day and noting the notes still not arranged for by Dr. William York, we believe it best to ask you to arrange all the notes at once. We can not delay the matter any longer and all must have attention." Ernest Meek was

cashier of the Farmers and Merchants Bank of Catlettsburg and also president of the Kentucky National Bank. Some of this correspondence was carried on with him. On March 22, 1917, John Y. York wrote the Kentucky National Bank "I rec'd your letter and I will not be down this wk. as there is some men here prospecting my coal now and I think I can make a sale and if I do I will be able to pay all I owe. I will be down next wk. sure to fix that up. If I sell and get a fair price the coal alone will bring about $6000." He failed to sell his coal, and his son, failing to take care of the debts, he sought to get from him the deed for the farm, which was not recorded; this he succeeded in doing about April 25th, and that day he so wrote defendant, Ernest Meek, saying he would be at Catlettsburg the next day. Some two or three weeks before that, Meek had attorney, John L. Smith, of Ashland, investigate the title to the York farm, who made the investigation and found the property unencumbered, except as to some judgments; he later inquired of some of the judgment creditors to find out what amounts had been paid on the judgments. This he reported to Meek. A week or so later, at Meek's request he prepared and delivered to him the deed which was later executed by York and his wife, dated May 3, 1917, and now in suit. The amounts of these judgments do not appear.

On May 3, 1917, John Y. York, accompanied by his wife, went to Catlettsburg, where they met Meek, president, and Frank C. Gibbs, cashier, of the Kentucky National Bank. It was found that York owed the bank, either as maker or endorser on five notes, all past due, $2996.95, in addition to a note of $624. This note of John Y. York was secured by a note of Dr. William York for $750. The bank claims that the decedent did not desire to pay the $624 note but instructed it to enforce payment of the collateral security. It appears that the original negotiations between John Y. York and Meek only contemplated that Meek would furnish him sufficient funds to pay his debt at the bank, but when they closed the transaction, York insisted on receiving about $3500, and on further calculation this was raised to $3761.95. His wife, who was a young woman about thirty years of age, at his instance,

objected to his receiving a sum just sufficient to pay the bank's debt, and he used this objection to raise the amount. Meek gave his note to the bank for $3761.95, and the bank turned over to York his notes for $2996.95, and he was paid in cash the difference, or $765. Meek's note to the bank, dated May 3, 1917, was made payable on demand; it is in the form of a bank collateral note, and the John Y. York deed was deposited or pledged with it as collateral security. Soon after the deed was executed, but the same day and after the close of banking hours, attorney Smith, who had been called by telephone by defendant Meek, came and prepared the following agreement, which was then executed by the parties:

"This agrement made and entered into this the 3d day of May 1917 by and between John Y. York and Ernest Meek, Witnesseth, that it is agreed that Ernest Meek will at any time within one year after the date hereof, convey to the said John Y. York or his order certain pieces of property this day conveyed to him by the said John Y. York and Ida York, his wife provided that said York pay to him the principal and interest, taxes and all and any costs he my have paid out on said property during the said year and to reimburse him for any and all judgments that may now or hereafter become a lien thereon. This agreement is only good until May 3d 1918 upon which date it shall become null and void."

At the time the deed was made John Y. York did not live on the farm, but he retained possession of it until the day of his death, some seven months later, and collected the rents thereon. Meek testifies York was to have the use of the farm, without charge, for a year, and that for that period he had the option of buying it back at the same price, plus interest, taxes and costs; but that it was only an option, and since York did not pay the amount within the year, the option became void according to the letter of the contract. His chief claim seems to be that the relation of debtor and creditor between York and Meek did not exist after the conveyance; that if he could not require York to repay him any part of the money as paid out by him, then the relation of debtor and creditor did not exist and the deed is not a

mortgage. But the relation of debtor and creditor may be established by parol evidence, and all the facts and circumstances in that connection may be considered. Meek might have sued York upon the common counts in assumpsit and recovered this money, if York was in fact his debtor, and he did not need York's note or promise in writing to prove the debt. His debt might be established by parol evidence as in other cases.

What are the undisputed facts in this case?

First: The grantor was in debt and hard pressed for money. He owed this money to the Kentucky National Bank, of which the grantee was president. The grantee was fully aware of the bank's effort to collect its debt.

Second: The farm conveyed is some thirty miles distant from where Meek lived and where the transaction was closed, yet Meek took title to it, without ever seeing it, and so far as the record discloses, without making the kind of an investigation that business men usually make of property values before a purchase of that kind is consummated.

Third: In connection with this transaction, on March 22, 1917, just seven weeks before the deed was made, York had written to the bank that some men were there prospecting for his coal and that if he could make a fair sale he would receive about $6000 for it. While this may not be evidence of its value, yet it shows what York thought the value of the coal was; and if he were of the opinion that the coal alone was worth $6000, it is not likely that within seven weeks thereafter he would sell the land, including the coal, for $3761.95. This letter has an important bearing as evidence of the intent of the parties at the time the deed was made. Meek admits that when he acquired the deed he thought he could make from $1000 to $1500 by the transaction.

Fourth: While Meek himself as an individual is not shown to be a known money-lender, yet he was president of the Kentucky National Bank, the bank to which the grantor owed the debt.

Fifth: The note he executed for the $3761.95 was made to his bank, payable on demand, yet when his deposition was

taken, December 16, 1919, more than two and one-half years after the note was given, it was still unpaid; no interest had been paid on it. So far as the record shows, no payment on it has yet been made. A national bank's paper is as a general rule commercial paper, requires prompt payment or renewal, and especially important is the prompt payment of interest. Delay in collection of principal and interest might be excused because of this controversy, but it did not arise until after the grantor died, and suit was not brought till nearly a year after the note was given. No excuse is shown for non-payment of the note or interest before that time, except that the maker did not have the money. Debtors who owe money to banks consider that a good excuse, but banks generally do not let them off so easily; they at least as a general rule require renewal so as to keep their paper "alive", and if the debtor can not pay the interest it is generally added to the principal so it will draw interest. Meek's note was not even renewed. It will be recalled that Meek at no time parted with any money of his own. The $2996.95 used to pay the debt of York to the bank was not "new" or "fresh" money, advanced by Meek, or brought into the bank by him; nor was the $765 which was paid or advanced to York. All this money came from the bank's vaults. The only change on paper was that Meek appeared as maker of the note instead of York. The debt was still owing to the same bank, though changed in form and amount. Meek, in fact, never actually parted with a single dollar in the transaction. True, his name is now on the note, and he thereby gave his credit to back York's debt, but as we shall see hereafter, there may have been good reason for that. Suppose the deed had been made direct to the bank; would there be any substantial difference between that situation and this, where he made it to one, who stood in a fiduciary relation to the bank? We see none. Equity always looks to the substance. It wholly disregards mere form when that is found necessary to do justice between the parties. We think under the circumstances that the bank and not Meek is the real creditor of York's estate in this case for the amount of this claim.

Sixth: Meek never took possession of the farm notwith-

standing the fact that York did not live on it. He might without prejudice to his view of the case out of tender consideration for the grantor, have allowed him to live on it in his old age, had he had no other home, but he had a home at Glenhays and lived there; but Meek allowed him to collect the rents from the farm while he lived and says he intended he should do so for a year, had he lived that long.

Seventh: The agreement, executed by the parties, while in point of time written after the deed was delivered, yet it was executed so soon afterward,—within an hour or so,— that it may properly be considered as contemporaneous with it. When we look to that we see that York was not only required to repay to Meek the principal and interest for the amount he advanced, but taxes and any costs he may have paid out on the property during the year; and more, to reimburse him for any and all judgments that may then or thereafter become a lien thereon. Why this last provision? Why provide for repayment of "any costs"? Was suit threatened from any quarter? The record shows that the First National Bank of Huntington obtained a judgment against York on May 8, 1917, five days after the deed was made and three days after it was recorded, for $339.65 and costs. Meek doubtless thought he would have to defend his right; this would mean the incurring of costs, which he might have to pay. He knew there were other creditors. Had the bank taken a deed of trust to secure its debt, instead of a deed absolute on its face, it doubtless would have been attacked immediately as a preference. But having the deed made to Meek, not to the bank, gave it the appearance on its face of being a regular business-like transaction, with the bank's name left out. We do not mean to say that there was any dishonesty on the part of the bank officials, but do think that the paper took the form of a deed rather than a deed of trust in order to give the bank a preference of its claim, and that this was the real reason why Meek was willing to back York's debt. He was anxious to have his bank secured and took this means to effect it.

That the farm was worth more than $3761.95 when the deed

was made is conceded by all. Meek himself says it was then worth $4500 and he thought he could make from $1000 to $1500 on the deal. When we consider all the facts and circumstances surrounding the transaction, we are compelled to hold that the deed was not intended by the parties to be an absolute sale but a mortgage; that it was made for the purpose of securing the bank its debt and that the estate of John Y. York has the right to redeem or to have the land sold to pay the decedent's debts. Of course, this does not disturb the security of the bank or Meek, if he desires to prove the claim to be his instead of the bank's, and by so holding we will be doing equity between the parties and no one will be injured.

This position is fully sustained by cases of this character heretofore decided by this court, among which may be mentioned: *Davis* v. *Demming*, 12 W. Va. 246; *Hoffman* v. *Ryan*, 21 W. Va. 415; *Hursey* v. *Hursey*, 56 W. Va. 148, 49 S. E. 367; *Froidevaux* v. *Jordon*, 64 W. Va. 388, 62 S. E. 686; *Sadler* v. *Taylor*, 49 W. Va. 104, 38 S. E. 583; *Liskey* v. *Snyder*, 56 W. Va. 610, 49 S. E. 515. According to our view, therefore, the circuit court erred in holding that the deed was an absolute conveyance of the land and in dismissing plaintiff's original and amended bills. We will reverse the decree and remand the cause, with direction that the circuit court declare the deed to be a mortgage, and the lands to be assets in the hands of the administrator for the payment of the decedent's debts, to be administered according to equity and the principles herein announced.

*Reversed and remanded.*