# CHARLESTON.

PAT GAY *v.* JAMES GIBSON *et al.*

(No. 5469)

Submitted March 23, 1926.   Decided March 30, 1926.

1. FRAUDULENT CONVEYANCES—*If One Who is Particeps Dolo or in Pari Delicto Seeks to Enforce Fraudulent Executory Contract, Other Party May Interpose as Defense Fraudulent Character Thereof, Even Though it is Result of His Own Turpitude.*

   Where one who is *particeps dolo* or *in pari delicto* seeks in a pending suit to enforce a fraudulent executory contract, the other party thereto may interpose as a defense the fraudulent character of the contract, even though it be the result of his own turpitude.   (p. 287.)

   (Contracts, 13 C. J. § 440. Fraudulent Conveyances, 27 C. J. § 431.)

2. EVIDENCE—*That Fraudulent Contract, Purporting to Assign Claim, Was Under Seal, Will Not Estop Assignor From Showing What Consideration Actually Was.*

   Where such contract, under seal by one of the parties, purports to assign to the other a certain claim of the assignor in consideration of a certain amount of indebtedness represented as owing by the assignor to the assignee, when in fact no such indebtedness exists, the fact that the instrument is under seal will not estop the assignor, when the assignee seeks to enforce it against him, from showing what the consideration actually was.   (p. 288.)

   (Evidence, 22 C. J. § 1556.)

3. ACCOUNT STATED—*Although Assignee of Claim, Sought to be Assigned in Fraud of Creditors, Sought to Enforce it as Account Stated, it Was Subject to Impeachment for Fraud, Mistake or Error in Execution or Procurement, Unless Position of Opposite Parties Was Altered to His Prejudice.*

   Though the assignee seeks to enforce such contract as an account stated between the parties, it is not unimpeachable

as such. It is nevertheless subject to impeachment for fraud, mistake or error in its execution or procurement, unless the position of the opposite party has been altered to his prejudice.   (p. 288.)

(Accounts and Accounting, 1 C. J. § 335.)

4.  PARTNERSHIP—*Unless Plainly Unwarranted by Evidence, Finding of Commissioner on Question of Fact Should Not be Disturbed by Circuit Court; in Settlement of Partnership Accounts, Sustaining Exception to Commissioner's Report, Based on Conflicting Evidence, Held Error.*

Unless plainly unwarranted by the evidence, the finding of a commissioner on a question of fact should not be disturbed by the circuit court.   (p. 290.)

HATCHER, WOODS, JUDGES, absent.

(Equity, 21 C. J. § 789 : Partnership, 30 Cyc. p. 738.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Pocahontas County.

Suit by Pat Gay against James Gibson and others. Decree for the defendant, and plaintiff appeals, and the defendant prosecutes cross-appeal.

*Reversed and remanded.*

*L. M. McClintic* and *F. R. Hill,* for appellant.

*Fred O. Blue, Charles S. Dice,* and *J. E. Buckley* and *Andrew Price,* for Gibson.

MILLER, JUDGE:

The decree now before us for review was pronounced in execution of the decree and mandate entered here in the same cause on a former appeal by the same appellant.  85 W. Va. 226.

After the cause was reinstated on the docket of the circuit court, and pursuant to said mandate, the cause was referred to a commissioner to state and report the following matters of account :

1.  A settlement of the partnership accounts of Pat Gay and James Gibson.

2.  A settlement of James Gibson's trustee account arising out of the purchase by him for Pat Gay of the 68-¾ acre tract

known as the Levi Gay home place, and 841 acres, known as the Shearer lands on Williams River.

3. Any other matters demanded, pertinent to said partnership accounts or trustee settlement, or required by any party in interest.

The cause was first referred to N. C. McNiel, who made a report; afterwards it was referred to C. N. McWorter, who likewise made up and filed a report; and later it was again referred to D. H. Hill Arnold, who made and returned a third report, to which latter report the defendant filed some twenty-seven several exceptions, all of which were overruled except exceptions number 8 and 9, and 21 and 22, which were sustained, and on a restatement of the accounts in accordance with the rulings of the court upon these four exceptions, a balance was found on all accounts in faveor of the defendant, of $5,542.76, as of March 2, 1925, which with interest to the date of the decree, April 7, 1925, amounted to $5,574.26, for which sum the court decreed recovery by defendant against plaintiff, with interest, and also decreed the same to constitute a lien on Gay's lands, and that the lands be sold in default of payment within the time specified by the decree. The report of Commissioner Arnold was that Gibson on October 1, 1923, was indebted to Gay in the sum of $1,941.61.

In a formal way defendant's counsel cross-assign as error the overruling by the circuit court of all their other exceptions to Commissioner Arnold's report, but they offer little, if anything, of merit, either in their brief or in the exceptions themselves, to which they make reference, in support thereof. By marginal memoranda made by the circuit judge on these exceptions, reasons are noted for the court's action, which we think are sustained by the law applicable thereto; and we find no reversible error in these rulings.

The first error relied on by appellant is the court's ruling sustaining defendant's exceptions numbers 8 and 9 to Commissioner Arnold's report. Both relate to the same subject. Number 8 is for not allowing Gibson the sum of $2,500.00, with interest from January 1912; number 9 denies the proposition of law upon which the commissioner based his conclusion to deny credit for the sum stated in the 8th exception.

The basis of the claim is a paper writing, signed and sealed by Gay, dated January 18, 1912, whereby he purports to acknowledge that he is justly indebted to Gibson in the sum of $2,500.00, consisting of a note and open account, and referring to the pending suit of Gay against the estate of J. C. Gay, his deceased father, in which he is seeking to recover from the heirs a certain amount stated to be justly due him as an heir, and in consideration of the premises and the further consideration of one dollar to him in hand paid, the receipt of which was thereby acknowledged, he thereby did ''assign and transfer unto the said James Gibson the sum of $2,500.00 of any judgment which he may recover in said suit, above referred to,'' and thereby also authorized ''the court or his attorneys to pay to the said James Gibson, the said amount of $2,500.00 out of any money so found due him as aforesaid.''

The first proposition insisted upon by defendant is that this paper constituted a stated account between the parties, by which Gay is precluded from denying that, on the date of it, he was indebted to Gibson in the sum stated, consisting of a note and open account of that date.  This paper was first brought into the cause by defendant, in his answer to plaintiff's original bill, wherein he asserted his right to credit for this sum as an account stated, with interest, along with other items of debit, aggregating $1,590.25.  Defendant's statement, after crediting Gay with a note of $9,200.00, and a check of November 14, 1915, for $184.00, and another check with no date, of $100.00, brought Gay out indebted to respondent in the sum of $6,418.51.  After the filing of this answer, Gay presented and filed an amended and supplemental bill, in which, among other things, he alleged with reference to the paper of January 18, 1912, that after concluding the contract with Gibson respecting the purchase by him of plaintiff's lands at the judicial sale, as described in the opinion on the former hearing, Gibson induced him to execute the said instrument for the ultimate purpose of providing further capital to carry on the partnership agreed upon, and to stipulate therein that it was to secure a note and open account; and the amended bill further alleged in relation to said paper, that said Gibson had no note or open account against plaintiff, and

no such note or account was then or thereafter in existence, and that he was not indebted to Gibson; that he was successful in said suit, and Gibson never claimed any part of the money realized from said estate; that said paper was a fraudulent scheme so suggested by Gibson to hinder and delay plaintiff's creditors, and that plaintiff yielded to Gibson's request on account of favors and obligations then and before that time incurred for him by Gibson; that plaintiff did not execute said paper to defraud his creditors, and that the amount received from said estate was applied in discharge of his debts, the evidence showing that the amount applied was on debts for which the estate was liable as endorser for him; and it is alleged that the assertion of said paper by Gibson in this cause as a debt against him was for the purpose of perpetrating a fraud on plaintiff; that the paper remains executory, and that being *particeps dolo* or *in pari delicto*, Gibson should not be allowed to assert such paper as a binding obligation on plaintiff in this suit; that the affirmative issue was with him; and that plaintiff is entitled to defend on the ground of the fraudulent character of the instrument. The decisions of the courts everywhere, including our own, affirm this proposition. As collated by counsel they are: 12 R. C. L., p. 610, § 120, and note; *Edgell* v. *Smith,* 50 W. Va. 349; *Murrin* v. *Murrin,* 94 W. Va. 605; *Haymond* v. *Hyer,* 80 W. Va. 594; L. R. A. 1918B, page 1, and note; *Slifer* v. *Howell,* 9 W. Va. 391; *Horn* v. *Star Foundry Co.,* 23 W. Va. 594; *Craig* v. *Craig,* 54 W. Va. 183; *Sewell* v. *Norris* (Ga.), 13 L. R. A. (N. S.) 1118; Pom. Eq. Jur. §§ 940-942; 13 C. J. 492, § 440; *Mullen* v. *Hoffman,* 174 U. S. 658; *Marshall* v. *Dicks* (N. C.), 94 S. E. 514. And in accord with decisions elsewhere, our decisions say that a party to an alleged contract, where both parties are in *pari delicto,* may set up the illegality of the contract as a defense even though it may be his own turpitude. 13 C. J. 492, § 440; *Thomas* v. *Anderson,* 76 W. Va. 496; *Lanham* v. *Meadows,* 72 W. Va. 610; *McClintock* v. *Loisseau, supra;* and other West Virginia cases cited in 13 C. J. at page 492.

Gibson's contention is that this paper is bona fide and not a fraudulent instrument. If he had no such debt against Gay

as described therein, of course it was a fraudulent instrument, for Gay then had creditors not satisfied by the sale of his lands. On the witness stand Gibson produced no note or open account 'as described; did not recollect ever having had such note or account, nor what the consideration therefor was. If we could refer the debt called for to the obligations shortly before the date of the paper incurred by Gay to Gibson for the purchase of the latter for the former of his farm sold under judicial decree, or to some liability growing out of the partnership incurred about that time, of course the contract would be void of any fraudulent intent, and good between the parties, though may be amounting to an unlawful preference; but no such claim is made by Gibson; he seeks only to bind Gay by the paper and to estop him from denying its validity becauses executed under seal; but. if fraudulent it could work no such estoppel if the fraud be asserted by way of defense. Gibson swears that the paper was not the consummation of any account stated between the parties. He said they never got up to that point. While a paper under seal always imports a valuable consideration, the amount of the consideration can generally be shown aliunde. *Reymer* v. *South Penn Oil Co.*, 54 W. Va. 530. The true consideration for an assignment can be shown by parol evidence to be other than that recited in the assignment. *Thomas* v. *Linn*, 40 W. Va. 122. And there is no distinction in this regard between deeds and other instruments of writing. *Summers* v. *Darne*, 31 Gratt. 791. It is always competent to show want of consideration between the immediate parties, in order to complete a contract. *Nash* v. *Fulgate*, 32 Gratt. 595. But treating the paper as an account stated or as evidence thereof, it is not unimpeachable. It is subject to impeachment for fraud, mistake or error in its execution or procurement, unless the position of the opposite party has been altered to his prejudice. *Hoover-Dimeling Lumber Co.* v. *Neill*, 77 W. Va. 470. The circuit court cited in support of its ruling, *Owen* v. *Sharp and Wife*, 12 Leigh, 427; and *McClintock* v. *Loisseau*, 31 W. Va. 865. These cases, in so far as applicable here, simply affirm the proposition that a court of equity will not enforce a fraudulent contract at the suit of either party, but

will leave them in the position in which it finds them. Gibson is here seeking to enforce a contract against Gay, which Gay defends as fraudulent. To give Gibson relief, the contract being executory, and assuming it to be fraudulent, would be to go counter to the equitable rule invoked by counsel. Gay is defendant to the claim asserted by Gibson under this contract, and the maxim, *in pari delicto potior conditio defendentis,* that is, when both parties are equally guilty, the defendant shall prevail, is applicable. *Horn* v. *Star Foundry Co.,* 23 W. Va. 522, 532; *Haymond* v. *Hyer,* 80 W. Va. 594. In the latter case Judge WILLIAMS undertakes to harmonize the apparent conflict between the maxim relied on by Gay's counsel and that urged by Gibson's counsel, namely, *nemo allegans suam turpitudinem audiendus.* And on the theory of no fraud in the contract, as Gibson claims, the burden was upon him, after Gay showed that he owed him no such note or open account as the paper recited, to establish by competent evidence the fact recited; if he had any such note or account, he should have produced the note and showed the items of the account, or accounted for their loss. Our conclusion is that the court erred to the prejudice of plaintiff in sustaining exceptions 8 and 9 to the commissioner's report.

The next question to be considered is the ruling of the court below in sustaining exception number 21 to Commissioner Arnold's report, which charged Gibson with 238 ewes taken by him in 1917, at the rate of $16.00 per head, instead of $15.00 per head as reported by the two prior commissioners, the difference being $238. We are dealing here mainly with the report of Commissioner Arnold, who found $16.00 per head as the fair value of these sheep. The evidence as to price ranged from $12.00 to $20.00 per head as to their fair value at the time they were taken over by defendant. The circuit court justified its finding mainly on the findings of the two other commissioners, and if Commissioner Arnold had found on the evidence that these sheep were worth but $15.00 per head, we would not, on familiar principles, be disposed to disturb the finding. The question is, was the court below warranted in reducing the price found by the last commissioner? This commissioner seems to have given careful con-

sideration to the case and all the evidence. It is quite evident that he took the average price as fixed by all the witnesses, which on the whole case was perhaps the best way to determine the fact. With great respect for the opinion of the circuit court in this cause, we are disposed to apply to its decision the rule we would apply to our own, if the question had been presented to us in the first instance, namely, that the finding of the commissioner on questions of fact, on conflicting evidence, is entitled to great weight, and ought not to be disturbed unless plainly warranted by the evidence. *Reger* v. *O'Neal,* 33 W. Va. 159; *Wolfe* v. *Morgan,* 61 W. Va. 287; *Baker* v. *Jackson,* 65 W. Va. 282; *York* v. *Meek,* 91 W. Va. 106. We are disposed to hold, therefore, that the decree below on this exception should also be reversed.

The next and last point of error to be disposed of relates to exception number 22, sustained by the circuit court, relating to the charge against Gibson of $1,482.40, the reported value of the wool and lambs, the product of the 238 ewes during the year 1917. The number of lambs and the amount of the wool depends mainly on the estimate of Gay, and the statement thereof in his account, and the price of wool and lambs prevailing during the year 1917. As Gibson became the managing partner and then took over the possession of the lands of Gay, it was incumbent on him to keep a proper account of the property. That the sheep had fleeces ready to be shorn, and that they bore lambs, Gibson does not deny. While the evidence is somewhat meager, we can not say that the finding of the commissioner is wholly unjustified; quite the contrary. The suggestion of the circuit judge that the value of the product of the sheep should be regarded as included in the value of the ewes, because of what is regarded as an excessive allowance by the commissioner, at $16.00 per head, we think can not be approved in the face of the evidence, and that this exception should also be overruled.

Our conclusion, therefore, is to reverse the decree below in so far only as it sustains the defendant's exceptions numbers 8, 9, 21 and 22, and to overrule said exceptions and each of them, and to remand the cause with direction to enter a decree

in accordance with the report and findings of Commissioner Arnold, and for further proceedings in consonance with the views herein expressed.

*Reversed and remanded.*