# CHARLESTON.

M. J. HURLEY *v.* A. W. BEATTIE, ADMR., *et als*
(No. 4582.)

Submitted December 11, 1923.   Decided February 3, 1925.

SPECIFIC PERFORMANCE—*Performance of Oral Agreement to Convey Lands, in Consideration of Companionship During Old Age, Held to Authorize Specific Performance of Contract, Despite Nonpossession of Promisee.*

Where the part performance of oral agreement to convey lands consists in the performance of services of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, the contract can be specifically performed, even though possession of the land agreed to be conveyed was never in the vendee.

(Specific Performance, 36 Cyc. p. 673.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mason County.

Bill by M. J. Hurley against A. W. Beattie, as administrator of the estate of Samuel M. Smith, deceased, and others. From a decree dismissing the bill, plaintiff appeals.

*Reversed and remanded.*

*B. H. Blagg* and *Somerville & Somerville,* for appellant.
*F. G. Musgrave* and *J. E. Beller,* for appellees.

LITZ, JUDGE:

Plaintiff prosecutes this .appeal from a decree of the circuit court of Mason County, dismissing her bill filed at March rules, 1921, against A. W. Beattie, administrator of the .estate of her father, Samuel M. Smith, deceased, and the other heirs-at-law of the decedent, seeking to recover from the defendants that portion of the farm lying below the county road and personalty belonging to the estate, pursuant to an alleged agreement of the father to give her the property in recompense for her services and companionship while maintaining his home and ministering to him in old age, during the remainder of his life.

The defendants deny the existence of the alleged contract and assert that no memorandum in writing thereof having been produced, it is, if ever made, within the statute of frauds. They contend also that there has not been such part performance as will take the agreement out of the statute. Where part performance of an oral agreement to convey lands consists in the performance of services of such character that it is impossible to estimate their value by any pecuniary standard, the contract can be specifically performed, even though possession of the land agreed to be conveyed was never in the vendee. This rule applies peculiarly to services rendered in the care of aged persons. *Bryson* v. *McShane,* 48 W. Va. 130; *Jefferson* v. *Simpson,* 83 W. Va. 274; *Blagg* v. *Van Sickle,* 90 W. Va. 351, 357; Pomeroy's Equity Jurisprudence, Sec. 2248; 36 Cyc. 673; 25 R. C. L. p. 589.

As was said in the case of *Jefferson* v. *Simpson,* cited, the amount stipulated in such cases will be regarded as the estimate of the parties of the value of the services rendered or to be rendered. In contracts for companionship the loss to the other party in the performance thereof is often incapable of being measured in dollars and cents. Where this is the case the estimate of the parties and the sum stipulated is the only true measure of recovery. We are of opinion that the services performed by the plaintiff fall within the rule stated, and constitute part performance entitling her to specific enforcement of the contract, if the evidence sufficiently establishes it. The controlling question is, therefore, one of fact.

Samuel M. Smith lived in Mason County on his farm of 115½ acres, composed of four contiguous tracts of land divided into two parcels by the public road. In June, 1910, his wife died, leaving him, a feeble old man of seventy-five years, without anyone to take charge of his home or minister to his needs. From June to October, 1910, a nephew and niece lived with him. They were succeeded by a daughter, Mrs. Fannie Beller, and her husband, who remained until the following February or March.

In December, 1910, Smith visited the plaintiff, a widow, then living at Holcomb, Nicholas County, and another daughter, residing in Greenbrier County. After his return the Bellers departed. A grandson and granddaughter then cared for the old man until April 16, 1911, when the plaintiff took charge. From thence until his death, January 8, 1921, she preserved the home and cared for her father.

After the death of his wife, Smith was desirous of securing the services and companionship of one of his daughters in his declining years. The plaintiff testifies that a short while before accepting the trust she received a letter from her father stating that if she would maintain his home and take care of him the remainder of his life, he would give her that part of his farm lying below the county road and the personal property he might own at the time of his death. H. A. Odell, a merchant of Nicholas County, at whose store the plaintiff dealt while living there, testifies that before leaving Nicholas she *showed* him a letter (the contents of which he does not recall) from her father concerning the arrangement. The plaintiff says the letter was lost or mislaid in moving from Nicholas to Mason County. She also maintains that in compliance with the request of her father and in consideration of the offer set forth in the letter, she kept his house and cared for him from April 16, 1911, to the time of his death, January 8, 1921. There is not the slightest claim that the plaintiff failed in any manner properly to discharge without complaint the arduous duties which fell upon her; on the contrary the record fully proves that she was kind and attentive to the father and that her services were entirely satisfactory to him. He could not work, was crippled from a

broken hip sustained before his wife died, had to use a cane in walking, and suffered with rheumatism, kidney and heart trouble. Although two other daughters lived within ten miles of his home, it does not appear that either of them, or any of his other numerous children, made any effort whatever to relieve or assist Mrs. Hurley in the care of their father during his declining years.

The plaintiff is corroborated by her three daughters, who testify concerning alleged conversations between their mother and grandfather relating to the agreement. Several other witnesses give evidence of statements by the decedent to the effect that he would properly provide for plaintiff in consideration of her valued services. An example of the latter class of testimony is the evidence of William Jividen, president of the county court of Mason County, who says that in 1920 deceased told him he intended to give plaintiff "the lower end of his place." P. L. Dysard, engaged in the real estate and theater business at Richwood, Nicholas County, says he heard Smith advise V. H. Odell in June, 1916, that he had promised Mrs. Hurley his home place and personalty in consideration of her care of him during his old age, and that he desired to carry out the agreement. V. H. Odell states that Smith told him on that and numerous other occasions he had agreed by letter to give the plaintiff, in consideration of her services, the land below the road and his personal property. This witness also states that several times at the instance of plaintiff, he advised Smith to make a will carrying out the agreement, so as to avoid litigation after his death; that finally, after previous plans had been thwarted by bad weather and Smith's sickness, in 1920 at his request the witness took him to Point Pleasant where he consulted B. H. Blagg, an attorney, concerning the preparation of his will, and that on this occasion he heard Smith advise Blagg he desired a provision in the will giving plaintiff the portion of his farm lying below the road and his personal property.

Blagg in his testimony corroborates Odell and says that Smith told him the provision to be made in the will in favor of plaintiff was in accordance with his agreement to compen-

sate Mrs. Hurley for her services and companionship to him. The witness also states that the preparation of the will was deferred because Smith had not determined the disposition to be made of his other property, but with the understanding that as soon as he had done so and notified Blagg, the latter would go to Smith's home and prepare the will. (Smith, however, died intestate a few months later without having advised Blagg.)

In September, 1911, the decedent conveyed to plaintiff for a recited consideration of $300.00, a small portion of the land which she claims her father agreed to give her, and also a short while before his death gave her $1,000.00 in cash. Defendants claim that these transfers were intended as full payment for the plaintiff's services to her father, and further that they, together with the property she is seeking to recover, valued at $4,000.00 or $5,000.00, would be an unreasonable compensation for such services. We think the gift of $1,000.00 a short while before his death may be evidence of decedent's desire that she have his entire personal estate, rather than proof that it was intended in full payment for her services, as there was only $100.47 found among his belongings after his death; and under the authorities cited it can not be said that the value of the property claimed by plaintiff is in excess of a fair and reasonable compensation for the services.

Defendants also emphasize the testimony of the administrator and appraisers of the estate that at the time of the appraisal plaintiff did not assert title in herself to any of the personal property except the household goods. Plaintiff says that being under the impression the personal property owned by her father at his death would have to go through the administrator's hands, she merely pointed out the property acquired by herself individually from that which had been owned by him.

Excluding all improper testimony, upon consideration of the whole case, we are of opinion that the alleged contract has been fully proved, and that plaintiff is entitled to the relief sought. The decree of the lower court will be reversed,

the plaintiff here granted the relief prayed for, and the cause remanded with directions to proceed in accordance with this ruling.

*Reversed and remanded.*