ARNOLD A. CALLAHAM *v.* FIRST NATIONAL BANK OF HINTON *et al.*

(CC 687)

Submitted April 18, 1944. Decided June 13, 1944.

*Hartley Sanders,* for plaintiff.
*Percy H. Brown* and *W.. A. Brown,* for defendants.

FOX, JUDGE:

This suit was brought in the Circuit Court of Summers County by Arnold A. Callaham against First National Bank

of Hinton and W. H. Roberts, Sr., for the purpose of having decreed the specific performance of a verbal agreement alleged to have been made by the First National Bank to convey to the plaintiff a one-half undivided interest in thirty acres of land, situate in Talcott District in said County. Prior to the suit the defendant bank had conveyed the land involved to defendant W. H. Roberts, Sr., and for that reason he was made a party. The defendants filed separate demurrers to the bill of complaint, and the defendant bank, without waiving its demurrer, filed a special plea setting up the statute of frauds, to which plaintiff demurred. The trial court sustained the demurrers, to the bill, and overruled the demurrer to the special plea, and made its written opinion a part of the record. The questions passed upon by the trial court have been certified to this Court.

The question first to be considered is, of course, the sufficiency of the bill, the material allegations of which may be stated as follows:

Prior to April 10, 1940, the defendant bank was the owner of a judgment against one B. Z. Carden, the amount of which is not alleged, and which was a recorded lien upon his one-half undivided interest in the thirty-acre tract of land aforesaid. This tract was owned jointly by B. Z. Carden and his wife, Nellie Carden. The National Bank of Summers also held a judgment in the amount of $456.75 against both the Cardens, which was evidently a superior lien to the judgment of the First National Bank, although the bill does not specifically so allege. In these circumstances, some time prior to April 10, 1940, the defendant bank approached plaintiff and requested him to procure a conveyance from the Cardens to himself of the thirty-acre tract of land aforesaid; and also to procure from the National Bank of Summers an assignment to him of its judgment against the Cardens. It is alleged that the defendant bank verbally agreed that if plaintiff was successful in obtaining the conveyance and the assignment, he should then convey the whole of the thirty acres of

land to the defendant bank, and for his services he was to receive a reconveyance to himself of a one-half interest therein. On April 10, 1940, the Cardens conveyed to the plaintiff the thirty acres aforesaid; and on May 15, 1940, the National Bank of Summers assigned to him its judgment aforesaid. By deed dated June 18, 1940, plaintiff and his wife conveyed to the defendant bank the thirty-acre tract of land, which deed was acknowledged on the 19th day of June, 1940; and on the same day the bank gave to the plaintiff a memorandum in writing in the words and figures following: "A. A. Callaham In connection with our purchase from you of your one-half interest in the B. Z. Carden farm, located on Tunnel Hill, we agree that in the event we are unable to secure a release from the National Bank of Summers of their judgments, we will enter suit to sell the one-half interest in the said land (the B. Z. Carden interest), and hereby agree that we will either settle with you by cash or will deed you a one-half interest in the total tract. W. T. Fredeking June 19, 1940". The bill then alleges that after the deed to the defendant bank was delivered, and after the memorandum aforesaid had been executed, plaintiff repeatedly requested and demanded that the defendant bank convey to him an undivided one-half interest in the thirty acres of land, which the bank declined to do, assigning as the reason for its refusal, that it could not make a deed of general warranty, containing a covenant against encumbrances, due to the fact that it had not been able to procure releases of judgment liens against said thirty acres held by the National Bank of Summers, but holding out to plaintiff the assurance that as soon as the said land was cleared of encumbrances, it would discharge its obligation and comply with the alleged agreement. The bill also avers that later the judgments aforesaid were released, and the tract of land cleared of all encumbrances. In the meantime plaintiff, desiring to construct a home on the thirty acres, induced the defendant bank, as a partial compliance with the agreement between them, to convey to him a small portion of the thirty acres, and, on August 14, 1940, the defendant

bank did convey to the plaintiff and his wife, Blanche Callaham, a tract of 1.03 acres out of the thirty-acre tract aforesaid, at an agreed valuation of one thousand dollars; but though frequently thereafter requested to complete the performance of the alleged verbal agreement, the bank has failed and refused to do so, and on the contrary on the 25th day of February, 1943, conveyed the tract of thirty acres to defendant W. H. Roberts, Sr., subject, however, to the conveyance of the 1.03 acres of land aforesaid. The bill alleges that Roberts had complete knowledge of plaintiff's claim at the date of this conveyance.

This being the situation, plaintiff instituted this suit, in which the defendants appeared and filed their separate demurrers, and the bank its special plea, as above indicated, with the result stated.

There is, we think, one crucial question now before this Court, and that is whether the allegations of the bill are sufficient to take the case out of the provisions of Code, 36-1-3, commonly referred to as the statute of frauds. In order to clear away other questions which are not, in our opinion, properly raised on the record before us, it is necessary at this point to say: (1) That the written memorandum of June 19, 1940, quoted above, cannot be considered on the decisive question stated. This memorandum was, on its face, conditioned upon the bank not being able to secure the release of certain judgments held by the National Bank of Summers, in which event the bank agreed with plaintiff that it would "either settle with you by cash or will deed you a one-half interest in the total tract". The bill alleges that the judgments referred to were afterwards released, and, if this be true, the memorandum has no present force or value, except, probably, evidential value, should a question of fact hereafter arise as to whether the bank agreed to convey an interest in the land in question to the plaintiff; (2) no question arises as to the existence of a trust in favor of the plaintiff in the land in question, growing out of the alleged verbal agreement, because the bill neither avers nor relies on such trust, and it is doubtful that the agreement alleged would

sustain such a trust, although we do not at this time pass on that question; and (3) the conveyance of the 1.03 acres out of the thirty-acre tract made by the bank to plaintiff and his wife, Blanche Callaham, on August 14, 1940, for an agreed consideration, cannot be considered on the question whether the alleged verbal agreement, on which plaintiff relies, is or is not enforceable under the provisions of Code, 36-1-3; but may have evidential value on the question of whether the alleged verbal agreement aforesaid was entered into. The plaintiff has elected to rest his case on the alleged verbal agreement, and, indeed, must do so if he is to secure the particular relief sought. Of course, if he should in the end secure such relief, consideration would necessarily have to be given to the conveyance of 1.03 acres to plaintiff and his wife, and would to that extent lessen his interest in the remaining portion of the tract out of which the 1.03 acres was conveyed.

These questions aside, there remains for decision the question of whether the bill, accepting its allegations as true, states a case upon which, if such allegations be sustained by proof, a decree may be entered for the specific performance of the verbal agreement alleged. Code, 36-1-3, provides, "No contract for the sale of land nor the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent * * *." The verbal agreement alleged in the bill clearly comes within the quoted statute, and unless the bill states a situation which takes the case at bar out of the statute, the alleged agreement is clearly unenforceable. Plaintiff impliedly recognizes the situation in this respect, and would avoid the statute by the allegation that he has performed in full his part of the agreement, followed by the contention that this, without more, entitles him to performance thereof on the part of the bank. Admittedly, the plaintiff did not take possession of any part of the thirty acres under his alleged verbal agreement, nor is it clear that he could ever have done so to the exclusion of the bank, as his claim is only to an un-

divided interest. Possession to avail anything must be exclusive of that of the vendor. *Gallagher* v. *Gallagher,* 31 W. Va. 9, 5 S. E. 297; *Gibson* v. *Stalnaker,* 87 W. Va. 710, 106 S. E. 243. Nor did the plaintiff, relying on the verbal agreement, place any improvements on the tract. The only improvement placed thereon was on the 1.03 acres, and that after he obtained the conveyance thereof to himself and wife. This, in our opinion, does not serve to aid him on his claim for his interest in the residue. As to that claim he must rely on the alleged verbal agreement, and the full performance thereof on his part, together with any other circumstances which might tend to establish his right to specific performance.

Certain acts of part performance of verbal agreements for the sale of real estate have always been recognized in equity as taking a case out of the strict application of the statute of frauds. Code, 36-1-3. For example, payments of purchase money, in whole or in part, accompanied by possession of the land sold; or possession thereof, coupled with the placing of valuable improvements thereon by the purchaser, have always been held to justify a decree for the specific performance of a verbal agreement to convey real estate. Other instances could be mentioned. Courts proceed on the general theory that, in such circumstances, to permit a vendor to evade his agreement would, in a sense, be to permit the practice of fraud by him against the vendee, and equity has always avoided such result. We do not think it necessary to cite authority in support of these propositions. But the case alleged in the bill does not meet any of these situations. Here, at the most, is an allegation that certain services undertaken to be performed by plaintiff for defendant bank, in consideration of which the conveyance now sought was agreed to be made, have, in fact, been fully performed. It is recognized, of course, that such services must have been performed in keeping with and in performance of some part of the alleged verbal agreement, but the bill is clear on that point, and its allegations also make certain the terms of the alleged

agreement, and the property to which it relates, and is in those respects sufficient.

We think it clear that the performance of services of a nature such as can be compensated for by the payment of money, creates a situation no different from that where the money itself is paid. A verbal agreement for the sale and conveyance of land, and the payment of the purchase price in full by the purchaser, does not, alone, entitle him to a conveyance of the land, although he may recover the money paid in an action at law. To base a decree for specific performance on account of services alone, they must be of such a character as makes it impracticable, if not impossible, to estimate their value in money. The general rule is well stated in 49 Am. Jur., 773, Section 467. Without quoting from that section, the general rule may be stated to be that specific performance cannot be decreed on the ground of part performance, unless the acts are such that legal damages would not be adequate relief; and the mere rendition of services, the value of which can be estimated in money, is not, ordinarily, such part performance as will take the case out of the statute of frauds. It is stated that the rendition of services, in consideration of a verbal promise to convey is no more than the payment of purchase money, and does not entitle the purchaser to the enforcement of a verbal agreement to convey, in the absence of circumstances showing that the value of the services cannot be determined by any pecuniary standard, and adequate compensation awarded therefor; or that failure to enforce the agreement specifically will amount to a fraud on the promisee. Also that rendition of services which will take the case out of the statute must be services which cannot be estimated by any pecuniary standard, and subject to the additional qualification that the parties did not intend that they should be measured by such standard. To the same effect is 58 C. J. 1018. See annotations contained in 69 A. L. R. 145; 101 A. L. R. 1093. It will be noted that the element of intent on the part of the parties to the alleged verbal

agreement with respect to services may, if properly alleged and proved, be considered.

The question has been considered by this Court in cases arising out of agreement in consideration of the care and support of aged and dependent owners of real estate, and where they have agreed, in consideration of such care, to convey real estate. In *Hurley* v. *Beattie, Admr.*, 98 W. Va. 125, 126 S. E. 562, this Court held: "Where the part performance of oral agreement to convey lands consists in the performance of services of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, the contract can be specifically performed, even though possession of the land agreed to be conveyed was never in the vendee." This case cites *Bryson* v. *McShane*, 48 W. Va. 126, 35 S. E. 848; *Jefferson* v. *Simpson*, 83 W. Va. 274, 98 S. E. 212; *Blagg* v. *Van Sickle*, 90 W. Va. 351, 110 S. E. 816. We have been cited to no case which covers a situation such as is presented in the case at bar.

Tested by these principles, we do not think the plaintiff's bill alleges facts upon which we can say that the services rendered by the plaintiff were of such a character as may not be compensated for by the payment of money, or recoverable in an action at law. We are dealing only with the allegations of the bill as presented to us. Whether a full and complete allegation of all the facts and circumstances would bring the case within the principles above announced, and, if established by proof, justify a decree for specific execution of the contract alleged, we do not know. As alleged, there is the simple statement that, at the instance of the defendant bank, the plaintiff performed certain services; that he fully performed such services; and that in consideration thereof an interest in certain real estate was to be conveyed to him. There are not sufficient allegations that these services were of a peculiar nature which could not be compensated by the payment of money. They are not sufficient to entitle plaintiff to the specific execution of the alleged verbal agreement, unless we ignore the plain language of Code, 36-1-3.

The separate demurrers filed by the defendants set up various grounds. We think the only maintainable ground is that the contract alleged is not enforceable, in the absence of a showing that the services rendered were of a peculiar nature, not compensable in a pecuniary way. The views we have expressed make it unnecessary to pass upon the special plea filed by the defendant bank, because if the demurrer to the bill is sustained, there remains nothing to which the defendant can plead.

The ruling of the trial court on the demurrers will be sustained on the sole ground that the bill fails to allege facts and circumstances in connection with the services alleged to have been performed by the plaintiff, showing them to be of such character as to make compensation therefor in cash impracticable or impossible. We do not consider the memorandum of June 19, 1940, as having any effect on this question, or on any other question now before this Court.

The ruling of the trial court on the demurrer will be affirmed, and the case remanded to the Circuit Court of Summers County, where the plaintiff will still have the right, accorded to him by the order of the court certified herein, to amend his bill in such particulars as he may be advised.

*Ruling affirmed.*