J. SHIRLEY ROSS

*v.*

CHARLES A. MIDELBURG, *et al.*

(CC 715)

Submitted January 15, 1947. Decided April 1, 1947.

852

*Watts, Poffenbarger & Bowles, Edward S. Bock, Jr.,* and *Charles E. Mottesheard,* for plaintiff.

*Silverstein & Angel* and *L. H. Barringer,* for defendants.

HAYMOND, JUDGE:

The plaintiff, J. Shirley Ross, instituted this suit in the Circuit Court of Kanawha County to obtain settlement of an account between him and the defendants, Charles A. Midelburg and Katharyn Wilson Midelburg, his wife, and to compel the defendants to convey to him certain unsold parcels of real estate now held by them.

The circuit court, a special judge acting in lieu of the regular judge, sustained the demurrer of the defendants to the amended bill of complaint and on its own motion certified its ruling upon the demurrer to this Court.

Charles A. Midelburg is the principal defendant and when his complete name is not used he is referred to in this opinion as the defendant, the defendant Midelburg, or Midelburg.

The following facts appear from the allegations of the amended bill of complaint, which, on demurrer and for the purpose of considering the ruling of the circuit court, should be regarded as true.

Prior to July 23, 1938, and on that day, the plaintiff was the owner in fee simple of ten parcels of valuable real estate in Kanawha County, West Virginia. He was in debt and a decree of sale of eight parcels of his

land had been entered and special commissioners appointed in a pending lien creditors' suit which had been instituted for the purpose of subjecting his real estate to the payment of his debts. The value of the real estate decreed to be sold exceeded by a substantial margin the amount of the indebtedness of the plaintiff.

The defendant, Charles A. Midelburg, offered to assist the plaintiff in his financial difficulties. Conferences between them were had prior to and after May 7, 1938. As a result the plaintiff and the defendant, Charles A. Midelburg, entered into an oral agreement whereby Midelburg agreed to attend the sale, bid on the properties to be sold, and, if possible, purchase them and save to the plaintiff his equities in them. The agreement provided that if Midelburg should purchase the properties at the sale, he should be repaid the amount paid by him for the properties and the expense incurred by him, with interest; that Midelburg was to have the right to rent, sell, manage and control the properties he should acquire at the sale, if he or the plaintiff should find tenants or purchasers for them; that the rents and the purchase money from sales received by Midelburg were to be applied as credit upon the money paid and expended by him; and that if any of the property remained in his hands after he had been fully repaid he was to convey to the plaintiff the unsold parcels and to pay to the plaintiff the residue of such funds. The agreement also provided that if any other bidder should offer more than the amount which the plaintiff regarded each of the properties to be worth, Midelburg should permit such property to be sold to such bidder.

The eight parcels of real estate decreed to be sold were designated as parcels Nos. 1, 2, 3, 4, 5, 6, 7 and 10. The amounts at which the plaintiff was willing that these properties should be sold to a bidder other than Midelburg were listed in a written memorandum delivered to Midelburg before the sale. These figures were, for parcel No. 1, $6,000.00 cash; for parcel No. 2, $12,000.00, one-third cash; for parcel No. 3, $3,000.00, one-third

cash; for parcel No. 4, $6,000.00 cash; for parcel No. 5, $10,000.00 cash; for parcel No. 6, the assumption of a deed of trust debt and $10,000.00; for parcel No. 7, $100.00; and for parcel No. 10, $100.00, or a total of $47,200.00. These amounts the plaintiff considered low, but he was willing that the properties be sold at the listed prices, which would be sufficient to satisfy the lien indebtedness owed by him on the properties and the costs and leave an excess sufficient to enable him to discharge a lien debt which existed against other real estate owned by him, known as the Splash Beach property. If the sale were made on the basis stated above, the plaintiff would save the Splash Beach property free of the lien and be able to retain as his own several thousand dollars from the sale of the eight parcels.

The sale was made by the special commissioners on July 23, 1938. Twenty or twenty-five bidders and Midelburg attended the sale, at which Midelburg purchased parcel No. 1 for $5,100.00, parcels Nos. 2 and 3 for $12,500.00, parcels Nos. 4 and 5 for $14,450.00, parcel No. 6 for $3,700.00, parcel No. 7 for $10.00, and parcel No. 10 for $10.00, or a total of $35,820.00. Parcels Nos. 2 and 3 and parcels Nos. 4 and 5 were sold for one-third cash and the residue of the purchase price was payable in one and two years, with interest, to be secured by vendors' liens, and parcel No. 6 was sold subject to an existing deed of trust lien. The other parcels were sold for cash. Deeds for these properties were made by the special commissioners on July 28, 1938, to the defendant, Charles A. Midelburg.

Later, on August 16, 1938, the plaintiff assigned to the defendant, Charles A. Midelburg, by writing addressed to the special commissioners, any funds remaining in their hands after the payment of the debts, the liens and the costs in the creditors' suit, and authorized them to deliver a check for such funds to Midelburg. By virtue of that assignment the special commissioners paid to Midelburg on November 27, 1939, the sum of $3,724.30.

By deed dated July 23, 1938, signed and acknowledged August 8, 1938, the plaintiff conveyed to the defendant, Charles A. Midelburg, parcels Nos. 8 and 9 of his real estate, known as the Splash Beach property, as further security to Midelburg for the repayment to him of the amounts paid and to be paid by him in his efforts to save to the plaintiff his equities in the properties sold in the creditors' suit.

After the sale the plaintiff, pursuant to the understanding between him and Midelburg, assisted Midelburg in carrying out the oral agreement and in enabling Midelburg to rent and sell the properties which he had purchased at the judicial sale.

By reason of his purchase and his use and operation of the properties, the defendant, Midelburg, paid and expended a total of $48,177.94. The properties were worth, at the time of sale, an amount largely in excess of the total amount of $47,200.00, for which the plaintiff was willing for them to be sold to a purchaser or purchasers other than Midelburg.

Several days after the sale, Midelburg presented to the plaintiff for execution a writing dated August 1, 1938, which recited, among other things, the purchase by Midelburg of the eight parcels of real estate, the making of the deed, dated July 23, 1938, by the plaintiff to Midelburg for parcels Nos. 8 and 9, known as the Splash Beach property, owned by the plaintiff, and which had not been sold at the judicial sale, and the holding of the legal title by Midelburg to all the property formerly owned by the plaintiff, by virtue of the deeds from the special commissioners and the deed from the plaintiff for parcels Nos. 8 and 9, known as the Splash Beach property. The writing then stated that it was agreed between the plaintiff and the defendant, Charles A. Midelburg, that the plaintiff should have the exclusive right and option to purchase all of the property from Midelburg, on stated terms, at any time prior to, but not after, October 31, 1938. It further provided

that the transaction between the parties was not, and was not intended to be, a loan, but an act upon the part of Midelburg to give the plaintiff an opportunity to endeavor to raise funds with which to regain the properties which had been lost to him at the judicial sale. It stated that the plaintiff, at the time, had no right or interest in the property, other than the right to repurchase it from Midelburg upon stated terms; that time was of the essence of the agreement; and that if the plaintiff should fail to exercise the option on or before October 31, 1938, Midelburg should have the right to hold the property free from any and all claims and demands of the plaintiff. This agreement the plaintiff signed upon the representation of Midelburg to him that he desired the plaintiff to sign it in order to enable Midelburg to borrow money on the properties which he had purchased at the sale.

The conveyance by the plaintiff to Midelburg of the Splash Beach property, by the deed dated July 23, 1938, which was signed and acknowledged on August 8, 1938, was without any consideration and was made by the plaintiff as additional security to Midelburg for the repayment of the money expended by him in acquiring the properties, and to enable Midelburg to borrow money to carry out the oral agreement between him and the plaintiff. The amended bill of complaint charges that this deed, because it was not based on any pecuniary consideration, and because it was made upon the representation of Midelburg that it was necessary to enable him to perform his part of the oral agreement, was not an absolute conveyance, but was, in law and in fact, a mortgage to secure the payment to Midelburg of the indebtedness which the plaintiff owes him by reason of the money expended by Midelburg under the oral agreement between them in the purchase and the management by Midelburg of the properties sold to him at the judicial sale.

The plaintiff did not receive, at any time, any consideration for executing the assignment dated August

16, 1938, or the agreement dated August 1, 1938, both of which he executed at the instance of the defendant, Midelburg, for the purpose of affording him security for the repayment of the money which he had expended.

As a result of the purchase by the defendant, Midelburg, of the properties at the sale, he has received from sales made by him of the various parcels of real estate, $50,889.00; of which he has paid to the plaintiff only the sum of $1,000.00. Some of the properties were sold or transferred as a gift by the defendants to members of their family.

There remain unsold and still owned and held by the defendant, Midelburg, parcel No. 2, worth $15,000.00, and parcels Nos. 8 and 9, known as the Splash Beach property, worth $30,000.00.

The rents and the incomes received by the defendant, Midelburg, from the properties purchased by him at the sale, amount to a large sum of money. He has received from the properties an amount in excess of the total expended by him, and he now holds unsold properties of the value of $45,000.00. The defendant, Midelburg, at various times subsequent to the execution by the plaintiff of the written agreement between him and Midelburg, dated August 1, 1938, and after October 31, 1938, the date of the expiration of the option given by it to the plaintiff to repurchase the property, indicated his willingness to reconvey the unsold property to the plaintiff and to account to him for the moneys which Midelburg had received, and he has stated to different persons that he held the properties for the plaintiff. In November, 1945, however, Midelburg, in answer to the request of the plaintiff, made October 29, 1945, that he reconvey to the plaintiff the Splash Beach property, informed an attorney for the plaintiff that he would not give up anything he had.

The plaintiff has, at all times, performed the acts and the things required by the oral agreement to be done by him. The money received by Midelburg from the proper-

ties, upon an accounting, will be found to equal or exceed the amounts paid by Midelburg, including interest. If, however, upon such accounting it should be found that the defendant, Midelburg, has not received the amount of all sums paid by him, the plaintiff will, upon the ascertainment of any unsatisfied balance, pay the amount of such balance to the defendant.

The prayer of the amended bill of complaint is that the court decree that the money expended by Midelburg was a loan or an advancement in behalf of the plaintiff and that the transactions between them constituted a trust or a mortgage; that Midelburg be required to account for all money expended or received by him in connection with the real estate; that the money realized from the property be credited upon the sums paid by Midelburg; that the unsold property be ascertained; that if, upon such accounting, it be. found that the amount received from the property equals or exceeds the amount expended by Midelburg, the defendants be required to convey to the plaintiff the unsold property; that if, upon such accounting, it be found that the amount received from the property is not sufficient to repay the. money expended. by Midelburg, with interest, the deficiency be ascertained and decreed to be a lien upon the. unsold property; that when such deficiency is satisfied the defendants be required to convey to the plaintiff the unsold property; and that the plaintiff be granted general relief.

In substance the grounds assigned by the defendants: in support of the demurrer are:

(1) The oral agreement, alleged in the amended bill of complaint, is within the statute of frauds, and, for that reason, it is unenforceable.

(2) The alleged agreement, not being in writing, is not a valid declaration of trust.

(3) The written agreement between the plaintiff and the defendant, Midelburg, executed subsequently to the

oral agreement, and inconsistent with it, settles the rights of the parties against the claims of the plaintiff, and it can not be contradicted or varied by parol evidence.

(4) The amended bill of complaint admits that the deed in question is absolute on its face and such deed will not be disturbed because of an alleged failure of consideration.

(5) Allegations of fraud in connection with an oral agreement do not render the statute of frauds inapplicable.

These questions of law, so raised by the defendants, are certified to this Court for decision.

The oral agreement between the plaintiff and the defendant, Charles A. Midelburg, entered into prior to the judicial sale held on July 23, 1938, is a contract for the sale of land. By the contract, as alleged in the amended bill of complaint, the defendant, Midelburg, agreed to purchase the real estate decreed to be sold, to take and hold title to the real estate purchased, and, at some later unspecified time when the plaintiff should repay to him the purchase money and the other expenses paid by him, and interest, to convey the property, or the unsold portion, to the plaintiff. The defendant, Midelburg, pursuant to the agreement, purchased the real estate at the sale and paid for it with his own funds. From time to time he sold portions of the property and obtained funds from the sales which the plaintiff contends exceeded the money paid and the expenses incurred by the defendant under the parol agreement. He now refuses, upon the offer of the plaintiff to repay him in full if a settlement of the account between them shows that he has not been fully repaid, to convey the unsold real estate to the plaintiff. A contract for the sale of land to be enforceable must be in writing. Code, 1931, 36-1-3. A similar agreement was considered by this Court in a recent case, and it was there held that an oral agreement between the owner of land about to be sold at a judicial sale and a

prospective bidder, by which the latter was to purchase the land, pay for it, and at some future indefinite date permit the owner to redeem it by repayment of the purchase price was a contract for the sale of land, which under Code, 36-1-3, to be enforceable must be in writing. *Dye* v. *Dye*, 128 W. Va. 754, 39 S. E. 2d 98. It is manifest that if the transactions between the plaintiff and the defendant, Charles A. Midelburg, had progressed no further than the purchase by him of the property at the sale, his sale of some of the property, and his refusal to account for the proceeds of the sales and to convey the unsold parcels to the plaintiff, the verbal agreement, by virtue of the statute, would be unenforceable.

The dealings between the parties, however, did not stop at that point. After Midelburg received the three deeds for the eight parcels of land which, under the agreement, he purchased at the judicial sale, he induced the plaintiff, according to the allegations of the amended bill of complaint, which on demurrer must be taken as true, to cause to be paid to him the balance of $3,724.30 belonging to the plaintiff in excess of the debts owed by him and the costs of the creditors' suit. This payment was made to the defendant, and by him accepted, on November 27, 1938, after the expiration of the option granted the plaintiff to repurchase in the written agreement dated August 1, 1938. No consideration passed from the defendant to the plaintiff for this sum of money. It was paid to the defendant as additional security furnished by the plaintiff for his indebtedness to the defendant caused by his expenditures in connection with his purchase of the property and to enable the defendant to perform his part of the agreement. It is unlikely that the plaintiff, who was then in dire financial straits, would have assigned that substantial amount of money to the defendant for any other purpose.

In addition to the transfer by the plaintiff of the $3,-724.30 to the defendant and his acceptance of that sum under the oral agreement, the plaintiff having made the transfer in the belief that Midelburg would comply with

and perform the oral agreement, the plaintiff, according to the allegations of the amended bill of complaint, conveyed to Midelburg, without any consideration passing from him to the plaintiff, by deed dated July 23, 1938, which in form is an absolute conveyance, the valuable Splash Beach land worth $30,000.00, which the plaintiff then owned subject only to the lien of a deed of trust to secure a debt of approximately $1,800.00, the payment of which the defendant assumed. At the instance of the defendant, Midelburg, the deed was made by the plaintiff in the belief that the defendant would comply with the oral agreement and to furnish the defendant additional security on which to borrow money to enable him to carry out his part of the oral agreement. From the allegations of the amended bill of complaint, no other purpose or intention was entertained by the plaintiff in making the conveyance.

Though an oral contract for the sale of land is within the statute of frauds and is for that reason unenforceable, such an agreement may be removed from the operation of the statute by the conduct of the party who would, because of the statute, deny the binding effect of the agreement. "One may become estopped to set up the statute by conduct sufficient to constitute an estoppel in accordance with the usual rules as to estoppel generally." 27 C. J. 338. An equitable estoppel may be invoked to preclude a party to a contract from setting up the defense of the statute. 25 R. C. L., Statute of Frauds, Section 343. This doctrine operates to prevent the perpetration of fraud by one party to the contract upon the other party. "It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme.* * *." Pomeroy's Eq. Jur., 5th ed., Vol. 3, Section 921. It is a broad general rule that a court of equity

will not permit a party to take shelter under the defense of the statute and by so doing commit a fraud on the other party. *Brown* v. *Western Maryland Railway Co.*, 84 W. Va. 271, 99 S. E. 457, 4 A. L. R. 522; 25 R.C.L., Statute of Frauds, Section 343. In the leading case of *Seymour* v. *Oelrichs*, 156 Cal. 782, 106 P. 88, 134 Am. St. Rep. 154, the 11th head note or syllabus uses this language: "The doctrine that equity will hold one estopped from relying on the statute of frauds, where to do so will amount to the practice of fraud, is not limited in its operation to any particular class of contracts, but applies in every transaction where the statute is invoked." In the opinion, in discussing the doctrine of equitable estoppel as applied to the defense of the statute of frauds, the Supreme Court of California says:

"The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' 2 Pom. Eq. Jur. Sec. 921. It was said in Glass v. Hulbert, 102 Mass. 24, 35, 3 Am. Rep. 418: 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.' This statement has been accepted as setting

forth a plain and satisfactory ground for equitable jurisdiction, together with a clear indication of the proper limitation of its exercise. See Browne on Statute of Frauds, Sec. 457a."

Under the allegations of the amended bill of complaint, the transfer of the funds belonging to the plaintiff in the custody of the special commissioners and the conveyance of the Splash Beach property to the defendant, Charles A. Midelburg, were consented to and made by the plaintiff in the belief and with the expectation that the defendant recognized as binding and would perform and comply with the oral contract and that these acts would enable the defendant to do so more readily. The funds and the deed of conveyance were accepted and received by the defendant for that purpose. This conduct of the defendant operates to estop him from asserting the statute of frauds as a defense against the enforceability of the oral contract. *Mylius* v. *Koontz*, 69 W. Va. 621, 73 S. E. 319; *Wolfe* v. *Wallingford Bank and Trust Co.*, 124 Conn. 507, 1 A. 2d 146, 117 A. L. R. 932; *Vogel* v. *Shaw*, 42 Wyo. 333, 294 P. 687, 75 A. L. R. 639; *Knauf* v. *Elkhart Lake Sand & Gravel Co.*, 153 Wis. 306, 141 N. W. 701; *Halligan* v. *Frey*, 161 Iowa 185, 141 N. W. 944, 49 L. R. A. (N. S.) 112; *Everly* v. *Equitable Surety Co.*, 190 Ind. 274, 130 N. E. 227; *Glass* v. *Hulbert*, 102 Mass. 24, 3 Am. Rep. 418; 49 Am. Jur., Statute of Frauds, Section 583. In *Dickerson* v. *Colgrove*, 100 U. S. 578, 25 L. ed. 618, the Supreme Court of the United States makes this statement: "The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is that he who by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection and can not be used as a weapon of assault. It accomplishes that

which ought to be done between man and man, and is not permitted to go beyond this limit."

The contention of the defendants that the alleged agreement, not being in writing, is not a valid declaration of trust, which presents the second point certified, is well founded. The statute, which became a part of the law of this State by the Code of 1931, and which there appears as Section 4, Article 1, Chapter 36, provides that: "No declaration of trust of land shall be enforceable, unless it be made in writing, signed by the person who declares such trust or by his agent." That portion of the statute requires a person who acquires and retains legal title to land and chooses to hold it in trust for another to make a declaration of trust in writing in order to make his purpose effective. *Dye* v. *Dye*, 128 W. Va. 754, 39 S. E. 2d 98. The alleged agreement, not being in writing, can not, under the statute and the holding of this Court, be given the effect of a valid declaration of trust or create a trust in favor of the plaintiff.

The question of the character and the effect of the deed dated July 23, 1938, but not executed and acknowledged until August 8, 1938, on its face an absolute conveyance, made by the plaintiff to the defendant, Charles A. Midelburg, for the Splash Beach property, and of the written contract between them dated August 1, 1938, is presented by the third point certified. This important aspect of the case now calls for discussion and consideration.

The statute, Code, 36-1-3, which, as heretofore stated, would render unenforceable the alleged oral agreement between the plaintiff and the defendant, Charles A. Midelburg, in substance, has been a part of the statute law of this State since its formation. It was incorporated in the various Codes of the State as a section of the chapter which embodied the statute of frauds until the adoption of the Code of 1931. In compiling that Code the Revisers took it out of the chapter which contains

the statute of frauds, Code, 1931, 55-1-1, and placed it in Article 1 of Chapter 36, which deals with estates in property. See Revisers, Note to Code, 1931, 36-1-3. In that process the language of the original section of the statute of frauds was changed. As a part of Chapter 98, Code, 1923, the language was: "No action shall be brought in any of the following cases: * * * 6. Upon any contract for the sale of real estate, or the lease thereof, for more than a year; * * * unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent. But the consideration need not be set forth or expressed in the writing and it may be proved (where a consideration is necessary) by other evidence." The provision of the statute as it now reads, Code, 36-1-3, is: "No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence." Notwithstanding the change from language which prohibited an action upon a contract for the sale of real estate to language which declares that no such contract shall be enforceable, unless in writing, the statute is, in substance and effect, a statute to prevent fraud and to require the agreement to which it has always extended to be in writing. In its present form and in its new place in the Code of 1931, it has been regarded as a statute of frauds. See *Callaham* v. *Bank*, 126 W. Va. 907, 30 S. E. 2d 735, in which a contention of part performance of a verbal contract to convey real estate sufficient to remove it from the scope and the operation of the present statute was considered and denied.

The alleged oral contract here in suit, being a contract for the sale of land within the statute but for the conduct of the defendant Midelburg which estops him

from asserting the statute as a defense, is a valid contract between the parties to it. Even if the contract were unenforceable as being within the statute, it would not for that reason be void. The operation of the statute of frauds goes only to the remedy; it does not render the contract void. *Gibson v. Stalnaker*, 87 W. Va. 710, 106 S. E. 243; 33 A. L. R. 1502n.

As the alleged oral contract has been removed from the operation of the statute of frauds, by conduct of the defendant, Midelburg, which estops him from asserting the statute as a defense, the transactions engaged in by the parties, under the contract, are valid. Consequently the money paid and expended by Midelburg in purchasing and managing the properties, pursuant to the oral contract, created the relation of creditor and debtor between him and the plaintiff, and the plaintiff became indebted to Midelburg in the amount of such payments. This debt existed when and after the plaintiff executed and acknowledged the deed to Midelburg for the Splash Beach property, on August 8, 1938, as security for the debt. Though that deed was absolute on its face it will be treated as a mortgage if the parties intended it to secure a debt. 1 Glenn on Mortgages, Section 11. The existence of a debt for which the security is given is of course essential to the creation of a mortgage. *Gibson v. Hopkins*, 80 W. Va. 756, 93 S. E. 826. The debt may be a preexisting debt which continues as a subsisting obligation, and when that situation exists the deed will be regarded as a mortgage. The existence of the debt after the conveyance is the test by which the true character of the grant will be determined. 1 Jones on Mortgages, Section 265. In case of doubt as to the nature of the transaction, a court of equity will always lean in favor of regarding it as a mortgage rather than as a conditional sale. *Thacker v. Morris*, 52 W. Va. 220, 43 S. E. 141; 94 Am. St. Rep. 928; *Sadler v. Taylor*, 49 W. Va. 104, 38 S. E. 583; *Davis v. Demming*, 12 W. Va. 246; *Russell v. Southard*, 12 Howard 139, 13 L. ed. 927; *Conway's Executors v. Alexander*, 7 Cranch 218, 3 L. Ed. 321.

In the opinion of this Court in *Sadler* v. *Taylor,* **49** W. Va. 104, 38 S. E. 583, this statement appears: "If the transaction is found to have been a mortgage in its inception, the maxim, 'Once a mortgage, always a mortgage,' applies, and it remains a mortgage unless upon an adequate consideration the grantor afterwards conveys his equity of redemption, and such later transaction must be so reasonable and fair as to relieve it of any suspicion of unconscientious advantage taken by the mortgagee."

The deed, dated July 23, 1938, contains no defeasance, but none is necessary, as the right to redeem may be established by parol. *Hoffman* v. *Ryan,* 21 W. Va. 415. A deed absolute on its face may be shown to be a mortgage. *Dudley* v. *Buckley,* 68 W. Va. 630, 70 S. E. 376; *Froidevaux* v. *Jordan,* 64 W. Va. 388, 62 S. E. 686. "If the transaction was originally a security for the payment of money, it will be regarded and treated in equity as a mortgage, and the maxim, 'Once a mortgage, always a mortgage,' applies, and it will remain such unless changed by a new contract upon an adequate consideration, so reasonable and fair as to relieve it of any suspicion of unconscientious advantage. Ordinarily, subsequent writing, not shown to rest upon a valauble consideration, admitting a different relation or conveying the equity of redemption does not change it." *Hudkins* v. *Crim,* 72 W. Va. 418, Syllabus 3, 78 S. E. 1043. "Where a deed of land absolute and unconditional on its face, is accompanied by an instrument of defeasance, providing for the reconveyance of the property to the grantor, or the revesting of title in him on his paying a debt or performing some other act intended to be secured thereby, the two instruments will be taken together and held to constitute a mortgage." 41 C. J. 317. Though the general rule is that, for a deed and a separate instrument of defeasance to operate together to constitute a mortgage, it is necessary that they should be executed contemporaneously and as parts of the same transaction, yet, when both are made in the performance, and ac-

cording to the terms, of one and the same prior agreement, they are properly regarded as parts of the same transaction, and the defeasance, although executed at a later time than the deed, will relate back to it and convert it into a mortgage, 41 C. J. 322 and 323; *Lovering* v. *Fogg*, 18 Pick. (Mass.) 540. "The doctrine that a conveyance in essence a mortgage shall operate as such irrespective of its form does not depend for application on the appearance on the face of the instrument of an intention that it operate by way of security and therefore as a mortgage. On the contrary, such an intention may be manifested by a separate instrument executed as a part of the same transaction. In such case the two instruments are construed together and the conveyance held to constitute a mortgage. * * * While a separate writing may be effectual to impart to a conveyance the character of a mortgage, it is essential in every case that the writing relied on shall have been executed with the conveyance as part of the same transaction. In this connection, it has been held that in order that a conveyance be given the effect of a mortgage at law because of a separate defeasance, the defeasance must take effect at the same time as the deed, but the fact that there is a lapse of time between the execution of the deed and the separate instrument does not preclude them from being parts of the same transaction within the meaning of the rule here under consideration." 36 Am. Jur., Mortgages, 751.

The general rule, recognized in this jurisdiction, is that where land is conveyed by a debtor to a creditor to secure the repayment of a loan of money, and the borrower makes an absolute deed to the creditor, with a collateral contract or agreement for the repurchase of the property, the transaction is a mortgage and not an absolute sale. *Mankin* v. *Dickinson*, 76 W. Va. 128, 85 S. E. 74; *Liskey* v. *Snyder*, 56 W. Va. 610, 49 S. E. 515; *Hoffman* v. *Ryan*, 21 W. Va. 415; *Kyger* v. *Depue*, 6 W. Va. 288. "And parol evidence is admissible to connect papers which together constitute a deed and a de-

feasance, or a mortgage, and to show that an instrument bearing a subsequent date to the deed was either executed at the same time, or that its terms or substance were in fact agreed upon at the same time, and, although subsequently reduced to writing, constitutes a part of the same transaction." 41 C. J. 323.

Upon the facts alleged in the amended bill of complaint, the deed dated July 23, 1938, executed and acknowledged August 8, 1938, by the plaintiff to the defendant, Charles A. Midelburg, for the Splash Beach property, and the written agreement dated August 1, 1938, grew out of the alleged oral agreement and were made pursuant to it. Together they form one transaction. The written agreement, dated August 1, 1938, is an instrument of defeasance and the deed and the written agreement operate together to constitute a mortgage.

In this jurisdiction it is well settled that a deed absolute upon its face may be shown by parol evidence to be a mortgage. *Liskey* v. *Snyder,* 56 W. Va. 610, 49 S. E. 515; *Lawrence* v. *Dubois,* 16 W. Va. 443; *Davis* v. *Demming,* 12 W. Va. 246; *Klinck* v. *Price,* 4 W. Va. 4.

In *Lawrence* v. *Dubois,* 16 W.Va. 443, Point 1 of the syllabus reads: "Though a deed be absolute on its face, the real nature of the transaction can be proven by parol evidence or surrounding circumstances, and the deed be held to be a mortgage." In the opinion in that case with reference to a deed absolute in form, this language appears:

"But it is perfectly well settled almost everywhere, and especially in Virginia and West Virginia, that such an absolute sale may be converted into a conditional sale or a mortgage by proving that the real intention of the parties was that it should not be an absolute sale, and that such intention may be proven by the surrounding circumstances and by parol proof. It is unnecessary to cite authorities to establish this position, which is, so far as I know, almost universally admitted; but the cases of *Klinck* v. *Price,* 4 W. Va. 4, and

*Davis, committee* v. *Demming, et al.,* 12 W. Va. 246, establish this to be the law in this State."

"When a deed absolute is given, and at the same time a separate defeasance is executed, parol evidence is admissible to connect the two writings and to show that they were parts of the same transaction, and that the whole amounted to and was intended to be a mortgage." 41 C. J. 318.

In *Davis* v. *Demming,* 12 W. Va. 246, in which a deed absolute on its face and a contemporaneous agreement of reconveyance were involved, this Court uses this language:

"Parol evidence, the declarations and conduct of the parties at the time of the transaction or subsequently, as well as all the circumstances attending or surrounding the same are received to show, whether the transaction was a conditional sale, or mortgage; and this is done though the deed, or bill of sale be absolute on its face. *Robertson* v. *Campbell,* 2 Call 354; *King* v. *Newman,* 2 Munf. 40; *Lamb* v. *Shears,* 1 Wend. 437; *Horner* v. *Kiteltas,* 46 N. Y. 605. If there be no evidence other than the papers executed, to show directly, what was the intention of the parties at the time of the transaction, the following circumstances are regarded as having great weight in determining whether the transaction was conditional or absolute sale, or mortgage. If the alleged price given for the property was a reasonable price, it is a circumstance tending to show, that it was a sale and purchase at a price fixed by the parties at the time; if however the price is grossly inadequate, it raises a strong presumption that the real understanding of the parties was, that the vendor should have a right to redeem, and that the transaction was really a mortgage. The fact, that by the papers executed no such right exists, will be considered a matter of no importance, if it is shown by proof or surrounding circumstances, that a security or pledge for a debt was intended; for a party is never allowed to take from his debtor by any form of contract his right to redeem."

Parol evidence to show the character of the transaction and that a deed absolute on its face and a written

agreement of repurchase constitute a mortgage is admitted, not to contradict or vary the terms of such instruments but to esablish a constructive fraud, vitiating the instruments, or a superior equity in the nature of a trust. *Shields* v. *Simonton,* 65 W. Va. 179, 63 S. E. 972; *Liskey* v. *Snyder,* 56 W. Va. 610, 49 S. E. 515. The form of the instrument is immaterial and its recitals are of no effect when such independent equity is shown by extraneous evidence. *Shields* v. *Simonton,* 65 W. Va. 179, 63 S. E. 972. Whether a conveyance is a conditional sale with option to repurchase, or whether it is in fact a mortgage to secure the payment of a debt, depends upon the intention of the parties to be ascertained by the writing or writings executed, the situation of the parties and the facts and the circumstances as shown by parol testimony. *Farley* v. *Forster,* 96 W. Va. 652, 123 S. E. 599; *Gibson* v. *Hopkins,* 80 W. Va. 756, 93 S. E. 826; *Shank* v. *Groff,* 43 W. Va. 337, 27 S. E. 340. If the purpose and the intention of the parties to a transaction are to create a loan and by so doing establish the relation of creditor and debtor between them, and the title to the property conveyed with an agreement to reconvey or an option to, repurchase is held by the lender as security for the payment of the debt, the deed is in fact a mortgage, and the maxim "Once a mortgage, always a mortgage", applies. *Farley* v. *Forster,* 96 W. Va. 652, 123 S. E. 599; *York* v. *Meek,* 91 W. Va. 106, 112 S. E. 404; *Sadler* v. *Taylor,* 49 W. Va. 104, 38 S. E. 583; *Vangilder* v. *Hoffman,* 22 W. Va. 1; *Lawrence* v. *Dubois,* 16 W. Va. 443. It is for the court to determine, from all competent evidence in the case, both direct and circumstantial, whether the deed in question was intended at the time it was made to be a mortgage or an absolute conveyance. *Fridley* v. *Somerville,* 60 W. Va. 272, 54 S. E. 502.

In *Russell* v. *Southard,* 12 Howard 139, 13 L. ed. 927, in dealing with the question of the admissibility of parol evidence to establish the relation of mortgagor and mortgagee in the face of an unambiguous memorandum which was clearly designed to manifest a conditional

sale, the Supreme Court of the United States uses this language:

"It is insisted, on behalf of the defendants, that the question is to be determined by inspection of written papers alone, oral evidence not being admissible to contradict, vary, or add to, their contents. But we have no doubt that extraneous evidence is admissible to inform the court of every material fact known to the parties when the deed and memorandum were executed. This is clear both upon principle and authority."

It follows that the allegations in the amended bill of complaint as to the intention of the plaintiff and the defendant, Charles A. Midelburg, at the time the deed dated July 23, 1938, was made and the written agreement, dated August 1, 1938, was entered into between them, and the facts and the circumstances surrounding and forming a part of the entire transaction, may be established by evidence other than and outside the terms of each of those written instruments without violating the parol evidence rule.

The fourth and fifth grounds in support of the demurrer are embodied in the certificate of the circuit court. In view of the conclusions reached upon the three principal certified questions which have been considered and discussed, it is not deemed necessary to give consideration to or to comment upon the questions raised by those grounds of demurrer.

In the light of the allegations of the amended bill of complaint, which on demurrer must be regarded as true, it would be inequitable to deny the plaintiff the right to a hearing and the opportunity to sustain them by proper proof. The allegations sufficiently state an equitable cause of action in favor of the plaintiff, which, if supported by adequate proof, would entitle him to the relief for which he prays. The amended bill of complaint is good on demurrer and the action of the court in sustaining the demurrer was erroneous.

For the reasons stated the ruling of the Circuit Court of Kanawha County in sustaining the demurrer of the defendant.to the amended bill of complaint is reversed.

*Ruling reversed; case remanded..*